JJD:MPC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    -against-

DEJVID MIRKOVIC and
JOSEPH ROMANO,

              Defendants.

- - - - - - - - - - - - - - - - - -X

**M 12-929**

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF APPLICATION FOR
ARREST WARRANTS

(T. 18, U.S.C., § 1117)

EASTERN DISTRICT OF NEW YORK, SS:

    REYNALDO TARICHE, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states as follows:

    In or about and between August 2012 and the present, within the Eastern District of New York and elsewhere, the defendants DEJVID MIRKOVIC and JOSEPH ROMANO, together with others, did knowingly and intentionally conspire to violate Title 18, United States Code, Sections 1111 and 1114, to wit: the defendants conspired to murder a United States District Judge and an Assistant United States Attorney on account of the performance of their official duties, and committed one or more overt acts, as described herein, to effect the objects of the conspiracy.

    (Title 18, United States Code, Section 1117.)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent for the FBI, and am currently assigned to the Long Island Resident Agency. As part of my duties and responsibilities, I have been involved in the investigation of the defendants JOSEPH ROMANO, DEJVID MIRKOVIC and others for their involvement in a conspiracy to commit the murders of a United States District Judge (the "Judge") and an Assistant United States Attorney (the "AUSA"), whose identities are known to me.

2. I am fully familiar with the facts and circumstances of this investigation, based upon my participation in this investigation; statements made to me by Special Agents of the FBI, and state and local law enforcement officers including, but not limited to, undercover law enforcement officers, whose identities are known to me, and who are referred to herein as "UC-1" and "UC-2" respectively; statements made to me by a confidential informant, who is referred to herein as the "CI"; a review of records and documents, including, but not limited to, reports prepared by the FBI; and information learned through a review and analysis of consensually recorded phone calls and consensually recorded in-person meetings.

---

[1] Because the only purpose of this affidavit is to establish probable cause to issue the arrest warrants, I have not set forth a description of all the facts and circumstances of which I am aware.

3. On March 24, 2009, the defendant JOSEPH ROMANO and four co-defendants were indicted by a Grand Jury in the Eastern District of New York and the case was assigned to the Judge. See U.S. v. Romano et al., 09-CR-170. The AUSA was the lead prosecutor of that case. On September 28, 2010, ROMANO pled guilty to conspiracy to commit wire and bank fraud, in violation of Title 18, United States Code, Section 1349. On February 9, 2012, ROMANO was sentenced to a term of imprisonment of 15 years. Until September 28, 2012, ROMANO was incarcerated at the Nassau County Correctional Center ("NCCC") pending the resolution of post-sentencing hearings regarding restitution.

4. On August 7, 2012, law enforcement officers received information from the CI that the defendant JOSEPH ROMANO was seeking to hire someone to kill the Judge and the AUSA. Specifically, ROMANO discussed in detail his desire to torture and kill the Judge and the AUSA to retaliate against them for their respective roles in his underlying prosecution, conviction and sentence. Additionally, on August 10, 2012, ROMANO requested the CI's assistance in procuring a contract killer to murder the Judge, the AUSA and others. The CI provided the information to law enforcement officers.

5. Based on the information provided by the CI, on August 21, 2012, UC-1, posing as a contract killer for hire, met with the defendant JOSEPH ROMANO at the NCCC. UC-1 wore an audio

4

and video recording device at the meeting and the meeting was consensually recorded. During the meeting, ROMANO expressed his desire to have UC-1 carry out acts of violence on ROMANO's behalf. Preliminarily, ROMANO provided the name of a target, John Doe, an individual known to me, to UC-1. ROMANO told UC-1 that he was involved in a financial dispute with John Doe. ROMANO informed UC-1 that he would be willing to pay $3,000 and had contacts outside of jail who would provide UC-1 with the payment for the assault of John Doe.

6. The United States Attorney's Office for the Eastern District of New York subpoenaed recordings of the defendant JOSEPH ROMANO's outgoing telephone calls, which are routinely monitored and recorded by the NCCC, and discovered recordings of conversations wherein ROMANO referred to previous calls that he made from the jail, but for which no record existed under his assigned NCCC, telephone call PIN number.[2] Additional investigation revealed that ROMANO used PIN numbers assigned to other inmates to prevent discovery of his outgoing calls and conceal the contents of his conversations with the defendant DEJVID MIRKOVIC and others.

---

[2] A PIN, or Personal Identification Number, is a unique number assigned to each inmate and must be dialed into the phone prior to making a telephone call. A PIN number is also used to monitor and track calls made by inmates.

5

7. During a September 5, 2012 telephone call that the defendant JOSEPH ROMANO made using a PIN number assigned to another NCCC inmate, ROMANO ordered the defendant DEJVID MIRKOVIC to call UC-1, tell UC-1 that he was calling on behalf of ROMANO, and that MIRKOVIC would be in New York on September 14, 2012 to meet with UC-1.

8. On September 5, 2012, UC-1 received a voice mail message from the defendant DEJVID MIRKOVIC stating that he was calling on behalf of the defendant JOSEPH ROMANO, and that MIRKOVIC would be seeing UC-1 on September 14, 2012.

9. Between September 5, 2012, and September 14, 2012, the defendant DEJVID MIRKOVIC and UC-1 engaged in numerous telephone calls to arrange the meeting scheduled for September 14, 2012. These calls were recorded by UC-1.

10. On September 10, 2012, UC-1 met with the defendant JOSEPH ROMANO at the NCCC to discuss the assault on John Doe. ROMANO assured UC-1 that once the assault was completed, ROMANO would hire UC-1 for "a big job, some serious work."

11. On September 14, 2012, the defendant DEJVID MIRKOVIC met with UC-2, who was posing as an associate of UC-1, and delivered a $1,500 down payment for the contracted assault against John Doe. This meeting was recorded using audio and video technology.

12. On September 22, 2012, UC-1 called the defendant

DEJVID MIRKOVIC to inform MIRKOVIC that the assault of John Doe was successful and to arrange for the payment of the balance of the money. This telephone call was recorded by UC-1.

13. On September 25, 2012, the defendant DEJVID MIRKOVIC flew from Florida to New York. After arriving, MIRKOVIC met with UC-1 in East Meadow, New York and the meeting was recorded using audio and video technology. During the meeting, MIRKOVIC paid the $1,500 balance after UC-1 provided proof[3] of the purported assault on John Doe. MIRKOVIC and UC-1 discussed the additional work that the defendant JOSEPH ROMANO had mentioned. MIRKOVIC left and visited ROMANO at the NCCC for further instructions.

14. After meeting with the defendant JOSEPH ROMANO at the NCCC, the defendant DEJVID MIRKOVIC again met with UC-1 and offered UC-1 money to murder the Judge and the AUSA on behalf of ROMANO. This meeting was also recorded using audio and video technology. Specifically, MIRKOVIC provided the names of both the Judge and the AUSA that ROMANO wanted murdered. MIRKOVIC stated that ROMANO would pay UC-1 $40,000 for the murders of the Judge and the AUSA with a $20,000 down payment. Additionally, MIRKOVIC provided specific requests from ROMANO regarding the

---

[3] John Doe was never assaulted. The "proof" provided to the defendant DEJVID MIRKOVIC was a staged photo of an assault and an identification card John Doe provided to law enforcement officers.

manner in which the murders should take place. ROMANO requested that the heads of both the Judge and the AUSA be preserved in formaldehyde as souvenirs.

15. During the second meeting between the defendant DEJVID MIRKOVIC and UC-1, on September 25, 2012, MIRKOVIC paid UC-1 $2,000 towards the down payment for the murders of the Judge and the AUSA and agreed to pay the remainder of the down payment when he returned to New York on October 2, 2012. MIRKOVIC began to leave the meeting with UC-1, but quickly returned to ask whether UC-1 wanted to travel to a bank with MIRKOVIC, so MIRKOVIC could give him an additional $10,000 that day. UC-1 and MIRKOVIC traveled to a bank located in Carle Place, New York, where MIRKOVIC withdrew $9,900, which he then paid to UC-1. MIRKOVIC withdrew the money from a bank account in the name of Universal Coin Collections Inc., an account on which MIRKOVIC is sole signatory (the "MIRKOVIC Bank Account"). MIRKOVIC also informed UC-1 that the defendant JOSEPH ROMANO was willing to pay extra for the "souvenirs," if UC-1 was willing to store them until ROMANO's release from prison.

16. On September 26, 2012, law enforcement officers met with the CI. During the meeting, the CI relayed additional conversations the CI had with the defendant JOSEPH ROMANO regarding the purported assault of John Doe and ROMANO's plan to kill the Judge and the AUSA. The information provided by the CI

8

was independently corroborated by law enforcement officers.

17. On September 28, 2012, the defendant JOSEPH ROMANO was transferred from the NCCC to the Queens Private Detention Facility. Prior to being transferred, ROMANO again discussed with the CI his plan to murder the Judge and the AUSA. ROMANO also provided a handwritten note to the CI and asked him to mail it to the defendant DEJVID MIRKOVIC. The letter read "Hey Dave Thank God they moved me. Come visit me at the new jail. Make sure all our projects continue Joe."[sic]

18. On October 2, 2012, the defendant DEJVID MIRKOVIC again flew from Florida to New York and met with UC-1. The meeting was recorded using audio and video technology. During the meeting MIRKOVIC delivered an additional $10,000 for the murder of the Judge and the AUSA. Further, MIRKOVIC promised to pay UC-1 the final $18,000 upon confirmation of the murders of the Judge and the AUSA. A subsequent review of records for the MIRKOVIC Bank Account revealed that on September 13, 2012, MIRKOVIC withdrew $9,750, on September 25, 2012, MIRKOVIC withdrew $9,900, and on October 1, 2012, MIRKOVIC withdrew $4,750.

19. The investigation into the illegal activities of the defendants DEJVID MIRKOVIC and JOSEPH ROMANO and other subjects is continuing. Disclosure of the contents of this application may (1) lead to destruction of evidence; (2) flight

9

of other subjects of the investigation; (3) present a risk of danger to John Doe, the CI or other witnesses; and (4) otherwise jeopardize the continued investigation of this matter.

WHEREFORE, I respectfully request that arrest warrants be issued for the defendants DEJVID MIRKOVIC and JOSEPH ROMANO so that they may be dealt with according to law.

In addition, given the nature of this ongoing investigation, it is respectfully requested that this Affidavit and the arrest warrants be filed under seal.

REYNALDO TARICHE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
5th day of October, 2012

HON. ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK