**George Robert Goltzer**
**Attorney At Law**
**200 West 57th Street**
**Suite 900**
**New York, NY 10019**

**Tel. (212) 608-1260**
**Fax (212) 980-2968**
**grgoltzer@gmail.com**

October 16, 2013

By ECF

The Hon. John F. Keenan
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

***Re: United States v. Joseph Romano,***
***12 Cr. 691 (JFK) (EDNY)***

Dear Judge Keenan:

We represent Defendant Joseph Romano in the above-referenced matter and write to respectfully request an approximately 60-day continuance of jury selection and trial until **Monday, February 3, 2014**, or as soon thereafter as is convenient to this Court. We make this request as a result of the recent disclosure of evidence totaling over 90 CDs and DVDs, which require defense counsel's thorough review in order to provide effective representation of the defendant.

## Background to Continuance Request

On September 28, 2010, Joseph Romano pleaded guilty under Indictment No. 09 Cr. 170 (EDNY) (hereinafter, the "coin fraud case") before the Honorable Joseph F. Bianco to one count of Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341, 1343, 1349. On February 9, 2012, Judge Bianco sentenced Romano to 180 months imprisonment, to be followed by a three-year term of supervised release, for said offense.[1]

[1] A determination of restitution was continued subject to additional adjudication and still remains pending. As a result, the final Judgment has yet to issue in Romano's coin fraud case; similarly his conviction and sentence in that case have not yet been appealed.

On October 5, 2012, a sealed application was filed seeking the arrests of Romano and a second individual by the name of Dejvid Mirkovic. The application alleged the Romano and Mirkovic had conspired to murder a United States District Judge and an Assistant United States Attorney, specifically the judge and prosecutor associated with Romano's coin fraud case. On October 9, 2012, Romano was arrested in conjunction with the new charges, and on November 7, 2012, Romano and Mirkovic were indicted for such conspiracy.

On November 14, 2012, defense counsel filed a detailed and lengthy motion for discovery, seeking, inter alia, all material relevant to Rule 12.1 of the Local Criminal Rules of the Eastern and Southern Districts of New York, Rules 7(f), 12(c), 12(d), and 16 of the Federal Rules of Criminal Procedure, and Rules 104, 403, 404, 608, and 609, of the Federal Rules of Evidence (see *ecf* #16).[2] The Government did not oppose Defendant's motion and instead began providing discovery in its usual course.

On February 19, 2013, defense counsel filed pre-trial motions, which included, inter alia, requests for early disclosure of Jenks Act material as well as a motion to suppress statements (see *ecf* #29). In response, the Government opposed early discovery of Jenks Act material but consented to a suppression hearing (see *ecf* #38).

On April 18, 2013, the Government notified the defense of its intent to introduce evidence related to Romano's prior coin fraud case as "direct evidence of the charged conspiracy, as background evidence to explain the relationships among, and actions of, the conspirators, or alternatively, pursuant to Rule 404(b) of the Federal Rules of Evidence" (*ecf* #64 at 1).

On April 28, 2013, Romano sent a pro se letter-motion to the Honorable Sterling Johnson, Jr., seeking, inter alia, to withdraw his guilty plea in the coin fraud case (see United States v. Romano, Indictment No. 09 Cr. 170 [EDNY], *ecf* #563). On May 2, 2013, Judge Johnson denied Romano's pro se motion without explanation.

On June 21, 2013, the defense filed its opposition to the Government motion to introduce evidence of the coin fraud case as direct evidence, or under Rule 404(b) or any other rule (see *ecf* #73), and on July 8, 2013, the Government filed an additional memorandum in further support of the admission of said evidence (see *ecf* #76).

After reviewing the Government's June 21, 2013, and July 8, 2013, submissions, it became clear to defense counsel that there was a discrepancy between the evidence that defense counsel had received in preparation for the instant trial and the evidence that the

---

[2] All references to electronically filed documents (i.e., *ecf* entries) are to files docketed under the present Indictment unless stated otherwise.

Government *thought* defense counsel had received. Specifically, the Government thought defense counsel had received evidence that had been previously provided during the course of the coin fraud case, when in fact Romano's attorneys on the present Indictment had never received such discovery.

As a result, the next day, July 9, 2013, while speaking with counsel for the Government just prior to Defendant's suppression hearing, defense counsel informed the Government that we had never received any of the evidence disclosed during the coin fraud prosecution, and specifically requested that the Government provide the defense with copies of all discovery from the prior prosecution including specifically all Rule 16 material and all 3500 material *that had been previously provided to defense counsel in the coin fraud case*.[3] The Government agreed to provide defense counsel with such material as expeditiously as possible.

On July 23, 2013, the Government provided the defense with a basic outline of the Rule 16 material disclosed during the coin fraud case (see *ecf* #79 at 2 [referencing evidence outline]; see also Discovery Spreadsheet #1, attached hereto as, "Exhibit A"). Thereafter, a second oral request was made by defense counsel seeking copies of all of the evidence disclosed during the coin fraud case.

On August 27, 2013, this Court ruled, inter alia, that evidence regarding Romano's prior charged and uncharged coin fraud schemes is admissible as direct evidence of the presently charged murder conspiracies (see *ecf* #98).

On August 29, 2013, having received this Court's ruling regarding the admissibility of evidence related to the coin fraud case, but having still not received from the Government the overwhelming majority of such evidence, defense counsel filed a written request for: "(1) a complete set of all Rule 16 material from the defendant's prior prosecution, United States v. Romano, et al., 09 Cr. 170 (JFB) (EDNY) (hereinafter, the 'coin fraud case'); (2) a complete set of all Brady/Giglio material from the coin fraud case; and (3) a complete set of 3500 material disclosed in the course of the defendant's prior prosecution, including specifically 3500 material relating to the prior statements made to law enforcement by Dejvid Mirkovic (a/k/a David Mirkovic)" (*ecf* #99 at 1).

The August 29th written request repeated essentially the same requests that had been previously made orally to the Government, but then specifically clarified that we viewed evidence of Mirkovic's prior cooperation with the Government as favorable to the defendant's theory of defense in the present case (see *ecf* #99 at 2). We specifically noted that in view of this Court's determination that " 'Defendant's recorded statements

---

[3] As this Court is aware, Romano was represented by different attorneys in the coin fraud case than in the present case before Your Honor.

may provide support for the Government's contention that he trusted Mirkovic and his perceived co-conspirator' (Order, dated, August 27, 2013, at 12), we believe evidence tending to undermine such trust is discoverable pursuant to Brady, Kyles, and Mahaffy" (*ecf* #99 at 2, citing, Brady v. Maryland, 373 U.S. 83 [1963], Giglio v. United States, 405 U.S. 150 [1972], United States v. Mahaffy, 693 F.3d 113 [2d Cir. 2012]).

In this regard, we also noted that "the defense views evidence of Mirkovic's prior cooperation (or prior attempts at cooperation) as favorable exculpatory evidence tending to undermine the Government's theory that Romano and Mirkovic shared a relationship of trust during the period of time charged in the present indictment, particularly if such evidence was previously disclosed to Romano's attorneys during his prosecution in the coin fraud case" (*ecf* #99 at 2). We also repeated that we had never received any of the coin-fraud-case discovery from the Government nor from Romano's prior attorneys in the coin fraud case (*ecf* #99 at 1-2; see also *ecf* #99 at 2 n.1 [noting that we had spoken to Joseph F. Kilada, Esq., Romano's original attorney on the present Indictment and had confirmed that he too had never received the discovery in question]).

Thereafter, on September 6, 2013, defense counsel met with counsel for the Government in an effort to resolve the outstanding discovery issue. At such meeting defense counsel explained a general outline of the defense theory of the case as well as the importance and relevance of the evidence in question. Counsel for the Government again agreed to provide the discovery as expeditiously as possible.

On October 2, 2013, defense counsel finally received from the Government nearly all of the discovery that we had been requesting. What we did not know until we received it, however, was just how much discovery we had been missing.

## The Newly Disclosed Evidence

On October 2, 2013, defense counsel received from the Government a collection of 90 CDs and DVDs (hereinafter, CDs and DVDs interchangeably referred to as "discs") (see *ecf* #102). 89 of the discs contained Rule 16 material from the defendant's prior coin fraud case, and one disc contained, inter alia, 3500 material from the coin fraud case that related to Dejvid Mirkovic. This was the first time we had received any of the evidence contained on those 90 discs.

On October 13, 2013, the Government filed an additional discovery letter notifying defense counsel that it was providing an additional two discs of evidence related to the coin fraud case.[4]

[4] As of this writing, those final two discs have not yet been received by defense counsel.

The discovery provided by the Government over the past two weeks can be described as nothing less than vast and substantial. By comparison, prior to October 2, 2013, the Government had disclosed 11 discovery discs relating to conduct that occurred during the course of the presently charged murder conspiracies, whereas the Government has now disclosed an additional 90 discs relating to the coin fraud case (with 2 more presently coming in the mail), underlying evidence related to a case which the Government has repeatedly described as "direct evidence of the charged crimes" (Gov't Mot., dated, April 18, 2013 [ecf #64], at 1, 2, 3, 6, 8). Indeed, both the Government and this Court have concluded that the coin fraud case is not merely direct evidence of the charged crimes but also "inextricably intertwined with, and necessary to complete the story of, the charged [murder conspiracy]" (Gov't Mot., dated, April 18, 2013 [ecf #64], at 3; see also Order, dated, August 27, 2013 [*ecf* #98], at 4-5).

To give some real-world feel to the quantity of discovery that has just been disclosed, according to a discovery spreadsheet prepared by the Government and provided to the defense on October 2nd along with the newly disclosed evidence, the first 89 discs contain the equivalent of at least 68 "boxes" of files, not including voluminous audio and video recordings also contained on those discs. Somewhat more concretely, the newly disclosed evidence includes voluminous bank records, credit card records, business and financial records, sales records, sales orders, "victim files", telephone records, emails, surveillance photos, inmate records, and audio and video recordings. See Discovery Spreadsheet #2, attached hereto as, "Exhibit B" (drafted by the Government and received by defense on October 2, 2013).[5] Indeed, the newly disclosed evidence is so voluminous that it took defense counsel a week simply to create a second set of the material so that both of the undersigned defense counsel may have immediate and independent access to the newly disclosed evidence.

In its August 27, 2013, Order, this Court ruled that evidence related to the prior coin fraud case, as well as evidence related to a separate uncharged coin fraud, "is admissible as direct evidence of the charged [murder] conspiracy" (Order, dated, August 27, 2013 [*ecf* #98], at 14). As Your Honor explained:

> It is appropriate to admit the evidence pertaining to Defendant's fraudulent coin schemes as direct evidence of the charged conspiracy, because this evidence meets the standard recited in [United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)]. First, this evidence "is inextricably intertwined with the evidence regarding the charged offense" in that Romano allegedly used the proceeds from the second coin

---

5 An updated version of this discovery spreadsheet has, upon information and belief, been sent by the Government to the defense, however, as of this writing we have yet to receive it.

> fraud to pay for the murder contract. Second, the evidence is "necessary to complete the story of the crime on trial," namely, conspiring to murder the Judge and AUSA because of their association with the coin fraud prosecution.

(Order, dated, August 27, 2013 [*ecf* #98], at 4-5.)

We respectfully submit that since the evidence of the defendant's prior coin frauds is admissible as direct evidence of the present murder conspiracy, then defense counsel must be provided sufficient time to review the evidence related to those prior schemes. To rule to the contrary will deprive the defendant of his Sixth Amendment right to effective assistance of counsel.

We note that we do not take the instant request lightly. We know that this case has already been continued for a variety of reasons. However, each of those prior reasons is wholly unrelated to the basis for the present request. For example, the defense is not seeking a continuance because we have only recently been appointed to the case or because the defendant's competency is in question, as had been the basis for the prior applications. The defense makes the instant request because receiving 90+ CDs and DVDs of additional discovery – all admissible as direct evidence of the presently charged conspiracy – just two months prior to trial is simply unacceptable.

We also note that, upon information and belief, the prior case had been designated "complex". As such, we respectfully submit that defense counsel cannot be expected to effectively review the complex material at a speed that could only be accomplished if the material was straightforward or limited in scope. Indeed, we respectfully submit that even were we to drop all other trial preparation related this case, as well as all other work related to other defendants that we represent, the approximately six weeks we have remaining prior to the presently scheduled trial date of December 2, 2013, would still be insufficient to adequately review the voluminous discovery that has only just been disclosed.

**Since Romano is expected to testify at trial,**
**<u>the newly disclosed evidence will have a unique impact on the defense</u>**

Unlike most Federal prosecutions, in this case we expect that the defendant will testify on his own behalf at trial. Indeed, in light of this Court's rulings that the defendant's post-arrest statements are admissible in the Government's case-in-chief, as is evidence related to the defendant's two prior coin fraud schemes, Romano's testimony will most likely be the only manner in which the defense will be able to rebut the Government's allegations.

That being the case, no competent attorney would ever call a criminal defendant to the stand without first reviewing the evidence that will be relied upon by the Government to impeach the veracity and credibility of the defendant's testimony. Indeed, the newly disclosed evidence will surely affect any decision regarding whether or not the defendant should testify at trial. As such, sufficient time is necessary to review the newly disclosed evidence not simply on our own, but with Romano as well, to ensure that Romano's expected testimony can be reconciled with the Government's newly disclosed evidence, and also to prepare Romano for what we expect will be a thorough cross-examination.

If Romano did not intend to testify then it might be possible to prepare for trial without necessarily reviewing all of the discovery that the Government has just disclosed. However, since we do expect Romano to testify, we respectfully submit that a continuance is necessary to ensure that defense counsel do not commit malpractice.

## Conclusion

Accordingly, we respectfully request an adjournment of Defendant Joseph Romano's jury selection and trial until **Monday, February 3, 2014**, or as soon thereafter as is convenient to this Court. We hope Your Honor agrees that an approximately 60-day continuance is reasonable in this very unique case.

Respectfully submitted,

***/S/ George R. Goltzer***

George R. Goltzer
Michael K. Bachrach

*Attorneys for Defendant Joseph Romano*

cc: All counsel of record (by ECF)