467

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        : 12 CR 691
                                 :
                                 :
                                 :
        -against-                : UNITED STATES COURTHOUSE
                                 : BROOKLYN, NEW YORK
                                 :
                                 :
                                 : JANUARY 8, 2014
JOSEPH ROMANO,                   : 10:00 O'CLOCK A.M.
                                 :
        Defendant.               :

- - - - - - - - - - - - - X

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE JOHN F. KEENAN
SITTING BY DESIGNATION
UNITED STATES SENIOR JUDGE, and a jury.

A P P E A R A N C E S:

For the Government: WILLIAM J. HOCHUL, JR.
                    United States Attorney
                    Western District of New York
                    138 Delaware Avenue
                    Buffalo, New York 14202
                    BY:  MARSHALL MILLER
                         UNA DEAN
                         Assistant United States Attorneys

For the Defendant:  GEORGE GOLTZER, ESQ.
                    200 West 57th Street, Suite 900
                    New York, New York 10019

                    MICHAEL BACHRACH, ESQ.
                    276 Fifth Avenue, Suite 501
                    New York, New York 10001

Court Reporter:     SHERRY J. BRYANT, RMR, CRR
                    225 Cadman Plaza East
                    Brooklyn, New York 11201
                    sbryant102@verizon.net
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

PROSPECTIVE JUROR 52                    468

1          THE CLERK:  The next juror is number 52, 52.

2          (Juror present.)

3          THE COURT:  Good morning.

4          THE PROSPECTIVE JUROR:  Good morning, everybody,

5     Judge.

6          THE COURT:  Thank you for being prompt, we

7     appreciate it.  And where do you live, sir?

8          THE PROSPECTIVE JUROR:  In Baldwin, New York, Long

9     Island.

10          THE COURT:  Baldwin, Long Island?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  And do you have your own home out there?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  And do you own the home?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  And what do you do for a living, sir?

17          THE PROSPECTIVE JUROR:  I'm a retired New York City

18     Transit manager.

19          THE COURT:  Transit manager, okay.

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  So you worked for the Transit Department

22     for many years, I take it, then?

23          THE PROSPECTIVE JUROR:  Thirty-two.

24          THE COURT:  Thirty-two years.  And are you married,

25     sir?

PROSPECTIVE JUROR 52                    469

1              THE PROSPECTIVE JUROR:  Yes, sir.

2              THE COURT:  And does your wife work, or is she --

3              THE PROSPECTIVE JUROR:  Yes, she works also.

4              THE COURT:  What does she do?

5              THE PROSPECTIVE JUROR:  She works for the Long

6     Island Railroad.  She's a human resources manager.

7              THE COURT:  Has she been with the railroad for a

8     while?

9              THE PROSPECTIVE JUROR:  About six years.

10             THE COURT:  Six years.  And do you have children,

11    sir?

12             THE PROSPECTIVE JUROR:  Yes, sir.

13             THE COURT:  And are they grown?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  What do they do?

16             THE PROSPECTIVE JUROR:  The oldest one, he works.

17    He did ten years in the military.  He lives in the south.  He

18    lives in Louisiana.

19             THE COURT:  Would you talk a little louder so they

20    can hear you over there.  Go ahead.  He's in the military?

21             THE PROSPECTIVE JUROR:  He was in the military.  He

22    works in -- he's finished from the military, did ten years

23    with them, and he's now working in some capacity with the

24    military.  My youngest --

25             THE COURT:  He works for the military?

SB      OCR   RMR   CRR

PROSPECTIVE JUROR 52                    470

1          THE PROSPECTIVE JUROR:  Well, he -- he works for the

2     military, yes.  And my youngest one, he's -- he works -- he's

3     a software specialist with a company here in New York.

4          THE COURT:  What kind of specialist?

5          THE PROSPECTIVE JUROR:  A software specialist.

6          THE COURT:  Software specialist, okay.  And what is

7     your educational background, sir?

8          THE PROSPECTIVE JUROR:  I have two years of college.

9     I didn't graduate.  Two years of college.  And...

10          THE COURT:  Okay.  And have you ever been on a jury

11     before?

12          THE PROSPECTIVE JUROR:  Yes, sir.

13          THE COURT:  A criminal case or a civil case or both?

14          THE PROSPECTIVE JUROR:  One was grand jury, and one

15     was a criminal case.

16          THE COURT:  In the criminal case, was that in state

17     court?

18          THE PROSPECTIVE JUROR:  Yes, sir.

19          THE COURT:  And did you reach a verdict?

20          THE PROSPECTIVE JUROR:  Yes, sir.

21          THE COURT:  And do you remember in the grand jury,

22     was that State Grand Jury?

23          THE PROSPECTIVE JUROR:  I believe it was state, yes.

24     It was ten years ago.

25          THE COURT:  Basically, all you ever heard was the

PROSPECTIVE JUROR 52                          471

1    prosecution's case?

2              THE PROSPECTIVE JUROR:  Right.

3              THE COURT:  You very seldom saw a defendant, if

4    ever?

5              THE PROSPECTIVE JUROR:  A few.  A few defendants

6    showed up.

7              THE COURT:  A few, but not many?

8              THE PROSPECTIVE JUROR:  Not many.

9              THE COURT:  And they didn't have a lawyer?

10             THE PROSPECTIVE JUROR:  Correct.

11             THE COURT:  Well, this is quite different.  A trial,

12   you know, is quite different.

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Grand jury work is very important, but

15   it's quite different.

16             And in this case, you're going to hear tapes that

17   are played, and some of the language in the tapes is pretty

18   foul, but nobody's charged with using bad language.  Do you

19   understand that?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Would you hold that against anybody

22   because the language is bad?

23             THE PROSPECTIVE JUROR:  No.  No, sir.

24             THE COURT:  Do you have any close friends or

25   relatives in the FBI or any police department?

1           THE PROSPECTIVE JUROR:  I have a cousin that retired

2    from the police department, and I have -- his wife is

3    currently a police officer as well.

4           THE COURT:  Okay.  Your cousin's wife is presently a

5    police officer in New York City?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  And was he a New York City officer?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  The fact of the matter is that, as I

10   understand it, there are no New York officers involved in this

11   case, New York City officers.  However, police testimony has

12   to be evaluated the same way anybody else's testimony is.

13          In other words, a policeman doesn't have an

14   advantage as a witness and he doesn't have a disadvantage, or

15   she if it's a woman.  Do you accept that proposition?

16          THE PROSPECTIVE JUROR:  Yes, sir.

17          THE COURT:  Okay.  And the same for the FBI when I

18   say police officers.  Law enforcement.

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Have you ever been the victim of a

21   crime?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  What kind?

24          THE PROSPECTIVE JUROR:  I had several cars stolen

25   from me in my lifetime.

PROSPECTIVE JUROR 52                    473

1           THE COURT:  Cars stolen?

2           THE PROSPECTIVE JUROR:  Cars, yes.

3           THE COURT:  Were they stolen while they were parked

4    somewhere?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  They weren't hijacked?

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  What else?

9           THE PROSPECTIVE JUROR:  House broken into once.

10          THE COURT:  House?

11          THE PROSPECTIVE JUROR:  Apartment, years ago.

12          THE COURT:  House was broken into?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Would that affect you here?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Did you ever have any problems with the

17   federal government of any kind?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  And when you get the news, do you get it

20   from the newspapers, the television, the Internet?  How do you

21   get the news, if you get the news?

22          THE PROSPECTIVE JUROR:  Well, a little of all three,

23   actually.  More so the Internet than television, and then the

24   newspaper.  I don't read the news as much.  More electronic

25   news as anything else.

PROSPECTIVE JUROR 52                    474

1          THE COURT:  What television channel do you watch
2    primarily for news?
3          THE PROSPECTIVE JUROR:  Channel 2, channel 4.
4          THE COURT:  And how about what newspaper do you
5    read, or newspapers?
6          THE PROSPECTIVE JUROR:  I use the Daily News.
7          THE COURT:  And you say you use the Internet, which
8    is fine.  But so far as this case is concerned, does everybody
9    here have your promise that you won't use the Internet to find
10    anything out about the case?  In other words, you won't
11    research the case on the Internet.  Do we have your promise
12    about that?
13          THE PROSPECTIVE JUROR:  Yes, sir.
14          THE COURT:  And do you think you can be fair and
15    impartial?
16          THE PROSPECTIVE JUROR:  Yes, I think so.
17          THE COURT:  All right.  Any challenge for cause?
18          MR. MARSHALL:  No, Your Honor.
19          MR. GOLTZER:  No, sir.
20          THE COURT:  So you're qualified for service, and
21    that means you come back tomorrow morning to the central jury
22    room at 9:30 tomorrow morning.  Thank you very much.  That's
23    on the second floor, central jury room.
24          THE PROSPECTIVE JUROR:  Second floor, right.  Thank
25    you.

PROSPECTIVE JUROR 70                    475

1           THE COURT:  Thank you again.  You are excused.

2           (Juror leaves.)

3           THE CLERK:  The next juror is number 70.

4           THE COURT:  Good morning, sir.

5           THE PROSPECTIVE JUROR:  Good morning, Judge.

6           THE COURT:  Thank you for being prompt.  We

7    appreciate that.  It's a little chilly in here; you might be

8    better with your jacket on.  If you want to take it off, go

9    ahead, but I'm a little chilly, so maybe you want to keep it

10   on.

11          Where do you live, sir?

12          THE PROSPECTIVE JUROR:  2 Shorewood Drive, Bayville,

13   New York.

14          THE COURT:  You live in Bayville?

15          THE PROSPECTIVE JUROR:  Correct.

16          THE COURT:  I don't need your exact address, but you

17   live in Bayville?

18          THE PROSPECTIVE JUROR:  Correct.

19          THE COURT:  What do you do for a living, sir?

20          THE PROSPECTIVE JUROR:  I'm an executive commercial

21   lender at Capital One Bank.

22          THE COURT:  And how long have you been with the

23   bank?

24          THE PROSPECTIVE JUROR:  Seven years.

25          THE COURT:  And what is your educational background,

SB      OCR   RMR   CRR

PROSPECTIVE JUROR 70                          476

1  sir?

2          THE PROSPECTIVE JUROR:  I have a BBA in banking and

3  finance.

4          THE COURT:  From?

5          THE PROSPECTIVE JUROR:  Hofstra University.

6          THE COURT:  Are you married or single?

7          THE PROSPECTIVE JUROR:  Married.

8          THE COURT:  And do you own your own home?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  And does your wife work?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  What does she do, sir?

13         THE PROSPECTIVE JUROR:  She's the communications

14  director for New York Institute of Technology.

15         THE COURT:  And do you have children?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  And how many and how old are they?

18         THE PROSPECTIVE JUROR:  A girl that's 18 in college;

19  and a boy that is ten -- I'm sorry, in tenth grade, 16.

20         THE COURT:  Okay.  And the girl in college, where

21  does she go?

22         THE PROSPECTIVE JUROR:  She goes to Boston College.

23         THE COURT:  And have you ever been on a jury before?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  In this case, there are going to be

PROSPECTIVE JUROR 70                    477

1   tape-recordings that are played; and on the tape-recordings,

2   there's some pretty foul language, frankly.  Nobody's charged,

3   it's not a charge in the case that anybody used bad language,

4   but the fact is that they did.  Would you hold that against

5   anybody?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  Okay.  Do you have any close friends or

8   relatives in the police department of any jurisdiction, or do

9   you have any friends or relatives in the FBI?

10             THE PROSPECTIVE JUROR:  My cousin was a Deputy

11  Attorney General for the State of New Jersey.  And I have a

12  very good friend that's a court judge in Nassau County.

13             THE COURT:  Well, the judge, if he's a good friend,

14  you may see him during the trial.  Don't talk to him about the

15  case, please.

16             And the fact of the matter is that law enforcement

17  testimony, whether it's an FBI agent or a police officer from

18  any particular jurisdiction, that testimony has to be

19  evaluated and weighed the same as the testimony of a

20  layperson.  Do you understand that?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Do you have any problem with that?

23             THE PROSPECTIVE JUROR:  I'm sorry, repeat the

24  question, again.

25             THE COURT:  I'll phrase it in another form.  A law

PROSPECTIVE JUROR 70                            478

1   enforcement official doesn't start off with an advantage as a

2   witness because he or she is in law enforcement.  Each witness

3   is to be gauged, evaluated and scrutinized individually.  Do

4   you accept that proposition?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Okay.  And have you ever had any

7   problems with the federal government of any kind?  Sometimes

8   people get in an argument with the IRS.  If you were an

9   immigrant, which you're not, but if you were an immigrant, you

10  might have gotten in some kind of argument or difficulty with

11  the immigration service.  That's the kind of thing I'm talking

12  about.

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  What sources do you receive the news

15  from, television, newspapers, Internet?

16             THE PROSPECTIVE JUROR:  Yes, Internet, New York

17  Times.

18             THE COURT:  And do you watch television news?

19             THE PROSPECTIVE JUROR:  I watch mainly political

20  news, like MSNBC.

21             THE COURT:  And you say that you use the Internet,

22  which is fine.  Do we have your promise, and the lawyers and

23  the defendant, that you won't use the Internet to research the

24  case?

25             THE PROSPECTIVE JUROR:  Yes.

PROSPECTIVE JUROR 70                                    479

1          THE COURT:  Can you be fair and impartial?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Thank you very much.  Any challenge for

4    cause?

5          MR. MARSHALL:  No, Your Honor.

6          MR. GOLTZER:  No, but we need to disclose something

7    to the Court.

8          THE COURT:  What area?

9          MR. GOLTZER:  Not an area.  It's a disclosure that

10   we need to make at --

11         THE COURT:  Come up.

12         (The following occurred at side bar.)

13         MR. GOLTZER:  There are two things.  Number one, the

14   client advises us that he recognizes him from a restaurant in

15   Bayville, New York.  Bayville, was it?

16         MR. BACHRACH:  Yes.

17         MR. GOLTZER:  And number two, the gentleman gave his

18   exact address and the exact position and location of where his

19   wife works.  So, obviously, for unanimity reasons, you may not

20   want him on the jury.

21         MR. MARSHALL:  We were going to bring that up after

22   he left, but we do have concerns, and they're compounded that

23   he may know him.

24         MR. GOLTZER:  We felt we needed to let you know.

25   The client needed to let you know that, too.

PROSPECTIVE JUROR 62                            480

1               THE COURT:  Thank you.

2               (End of side bar.)

3               THE COURT:  For a reason about where you live and

4     the fact that somebody here knows you -- you may not realize

5     that, but somebody knows who you are -- we're going to excuse

6     you.  Thank you very much.

7               MR. GOLTZER:  Would you ask the gentleman not to

8     discuss it with any of the others?

9               THE COURT:  Yes.  Certainly, don't talk to any of

10    the other jurors.

11              THE PROSPECTIVE JUROR:  So I'm excused?

12              THE COURT:  You're excused.

13              THE PROSPECTIVE JUROR:  I go downstairs and check

14    out?

15              THE COURT:  Yes.

16              THE PROSPECTIVE JUROR:  Thank you, Judge.

17              THE COURT:  Thank you very much.

18              (Juror leaves.)

19              THE COURT:  Thank you, Mr. Goltzer, and thank you,

20    Mr. Romano.

21              THE CLERK:  The next juror is number 62, 62.

22              (Juror present.)

23              THE COURT:  Good morning.

24              THE PROSPECTIVE JUROR:  Good morning.  How are you?

25              THE COURT:  Fine.  How are you?

PROSPECTIVE JUROR 62                    481

1              THE PROSPECTIVE JUROR:  I'm okay.

2              THE COURT:  Good.  And I don't want to know your

3       exact address, but could you tell me where you live, what

4       county you live in?

5              THE PROSPECTIVE JUROR:  Suffolk County.

6              THE COURT:  Suffolk County?

7              THE PROSPECTIVE JUROR:  Uh-huh.

8              THE COURT:  And which town do you live in?

9              THE PROSPECTIVE JUROR:  Huntington.

10             THE COURT:  Huntington, okay.  And do you own your

11      own home?

12             THE PROSPECTIVE JUROR:  I do.

13             THE COURT:  And are you married?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  And do you work outside of the home?

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Would you talk nice and loud so that

18      everybody over there, all the way back to the wall there, can

19      hear you.  That way --

20             THE PROSPECTIVE JUROR:  All right.

21             THE COURT:  -- you don't have to repeat yourself.

22             So you're married.  What do you do for a living?

23             THE PROSPECTIVE JUROR:  I'm a receptionist at a

24      dermatologist's office.

25             THE COURT:  You're a receptionist in what kind of

PROSPECTIVE JUROR 62                              482

1    office?

2              THE PROSPECTIVE JUROR:  Dermatologist.

3              THE COURT:  Dermatologist.  And how long have you

4    worked there, about?

5              THE PROSPECTIVE JUROR:  About five years.

6              THE COURT:  Five years.  And does your husband work?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  What does he do?

9              THE PROSPECTIVE JUROR:  Auto parts deliveryman.

10   Auto parts.  He delivers.

11             THE COURT:  Are you able to hear that over there?

12             MR. GOLTZER:  Yes.

13             THE COURT:  Do you have any children?

14             THE PROSPECTIVE JUROR:  Yes, three.

15             THE COURT:  Three.  And how old are they?

16             THE PROSPECTIVE JUROR:  Two 34-year-olds and a

17   26-year-old.

18             THE COURT:  What do they do for a living?

19             THE PROSPECTIVE JUROR:  One's a chef, one's a tattoo

20   artist, and one's an auto mechanic.

21             THE COURT:  And what is your educational background?

22             THE PROSPECTIVE JUROR:  High school.

23             THE COURT:  High school, okay.  And have you ever

24   been on a jury before?

25             THE PROSPECTIVE JUROR:  No.

PROSPECTIVE JUROR 62                    483

1           THE COURT:  You're going to hear some tapes in this

2    case, and some of the language on the tapes is a little

3    off-color, as they say.  Would that affect your service in any

4    way?

5           THE PROSPECTIVE JUROR:  No.

6           THE COURT:  Okay.  Do you have any close friends or

7    relatives in the Federal Bureau of Investigation or in any of

8    the police departments on Long Island?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  Have you ever been the victim of a

11   crime?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  And concerning law enforcement, when FBI

14   agents testify or police officers, their testimony is to be

15   evaluated and weighed and scrutinized the same as the

16   testimony of any other witness.  In other words, they don't

17   start off with a big advantage or any advantage or a

18   disadvantage because of their job.  Does that make sense to

19   you?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  And you've never been the victim of a

22   crime?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  Did you ever have any problems with the

25   federal government of any kind?

PROSPECTIVE JUROR 62                              484

1              THE PROSPECTIVE JUROR:  No.

2              THE COURT:  And what sources do you obtain your news

3    from?  Do you read the newspapers, television?

4              THE PROSPECTIVE JUROR:  I have the newspaper only on

5    Sundays, and I watch morning news.  That's it.

6              THE COURT:  You watch the morning news?

7              THE PROSPECTIVE JUROR:  Yes.  That's it.

8              THE COURT:  And do you use the Internet?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Would you promise us that you wouldn't

11   use the Internet in connection with this case?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Okay.  Can you be fair and impartial?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Any challenge for cause?

16             MR. MARSHALL:  No, Your Honor.

17             MR. GOLTZER:  No.

18             THE COURT:  All right.  So you're qualified, ma'am,

19   to serve as a juror.  That doesn't mean that they're going to

20   pick you, but it means that you are qualified.  So if you can

21   come back tomorrow morning at 9:30 in the central jury room.

22             THE PROSPECTIVE JUROR:  I have a slight problem.

23             THE COURT:  What?

24             THE PROSPECTIVE JUROR:  I have a coworker that's

25   already been picked for a jury here, and we're both -- is

PROSPECTIVE JUROR 62                                485

1    there any way that -- a letter from work?  I don't know.

2            THE COURT:  You have a coworker who was picked for a

3    jury here?

4            THE PROSPECTIVE JUROR:  Yes.  She started serving

5    Monday.

6            THE COURT:  In our case?

7            THE PROSPECTIVE JUROR:  No, no, no, a different

8    case.

9            THE COURT:  We haven't picked a jury.

10           THE PROSPECTIVE JUROR:  No, a different case.

11           THE COURT:  When is she going to get off?

12           THE PROSPECTIVE JUROR:  I don't know.  I don't even

13   know what case she's on.

14           THE COURT:  How many people work in your office?

15           THE PROSPECTIVE JUROR:  About 20.

16           THE COURT:  What?

17           THE PROSPECTIVE JUROR:  About 20.

18           THE COURT:  Twenty?  I can't excuse you.  Sorry.

19           THE PROSPECTIVE JUROR:  Okay.

20           THE COURT:  Thank you.

21           THE PROSPECTIVE JUROR:  All right.

22           THE COURT:  Any challenge for cause?

23           MR. MARSHALL:  No, sir.

24           THE COURT:  Mr. Goltzer?

25           MR. GOLTZER:  No, sir.

PROSPECTIVE JUROR 65                    486

1            THE COURT:  So you come back tomorrow morning at

2    9:30.  Thank you very much.  Thank you.

3            (Juror leaves.)

4            THE CLERK:  The next juror is number 65, 65.

5            (Juror present.)

6            THE COURT:  Good morning.

7            THE PROSPECTIVE JUROR:  Good morning.

8            THE COURT:  Would you speak nice and loud so

9    everybody over there on that far side can hear you, okay?

10           THE PROSPECTIVE JUROR:  Sure.

11           THE COURT:  All right.  Where do you live?

12           THE PROSPECTIVE JUROR:  I live at 44th Street --

13           THE COURT:  I don't want to know the address.  I

14   mean --

15           THE PROSPECTIVE JUROR:  Brooklyn, Sunset Park.

16           THE COURT:  You live in Brooklyn?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  And what part of Brooklyn?  Flatbush?

19           THE PROSPECTIVE JUROR:  Sunset Park.

20           THE COURT:  Sunset Park, okay.  And do you have an

21   apartment there?

22           THE PROSPECTIVE JUROR:  Yes, I do.

23           THE COURT:  And do you rent the apartment?

24           THE PROSPECTIVE JUROR:  Yes.

25           THE COURT:  And are you married?

PROSPECTIVE JUROR 65                                487

1          THE PROSPECTIVE JUROR:  Yes, I am.

2          THE COURT:  Okay.  What does your husband do for a

3     living?

4          THE PROSPECTIVE JUROR:  He works for the Postal

5     Service.  Post Office.

6          THE COURT:  Post Office.  And do you work?

7          THE PROSPECTIVE JUROR:  No.  I am a housewife.

8          THE COURT:  You're a housewife.  Do you have any

9     children?

10         THE PROSPECTIVE JUROR:  Two adults.

11         THE COURT:  How old are they?

12         THE PROSPECTIVE JUROR:  One is 30.  One is 29.

13         THE COURT:  And what do they do for a living?

14         THE PROSPECTIVE JUROR:  The boy, he's IT, in IT.  He

15    works for an investment company.

16         THE COURT:  Information technology, in other words?

17         THE PROSPECTIVE JUROR:  Uh-huh.  The girl, she works

18    for a radio station.  She is in charge of budget.

19         THE COURT:  Budget?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  For the radio station?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  All right.  And what is your educational

24    background?

25         THE PROSPECTIVE JUROR:  High school.

PROSPECTIVE JUROR 65                          488

1              THE COURT:  And have you ever been on a jury before?

2              THE PROSPECTIVE JUROR:  I was on Adams, civil court.

3              THE COURT:  In the civil court?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  And do you remember what the case was

6    about?

7              THE PROSPECTIVE JUROR:  If I could remember a little

8    bit, it was about -- it was related to -- it was an

9    ophthalmology case.

10             THE COURT:  Ophthalmology?

11             THE PROSPECTIVE JUROR:  Yes.  She was filing for...

12             THE COURT:  Malpractice?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  I see, okay.  I don't want to know the

15   verdict.  Did you reach a verdict?

16             THE PROSPECTIVE JUROR:  I believe they did.

17             THE COURT:  Were you on the case?

18             THE PROSPECTIVE JUROR:  Yes, yes.

19             THE COURT:  So you did reach a verdict?

20             THE PROSPECTIVE JUROR:  Yes, yes.

21             THE COURT:  Now, in this case, you're going to hear

22   some tape-recordings of conversations, some of them telephone

23   conversations, some of them face-to-face encounters.  Some of

24   the language on the tapes isn't so nice.  Nobody's charged

25   with using bad language, but would you hold that against

PROSPECTIVE JUROR 65                    489

1   anybody?

2             THE PROSPECTIVE JUROR:  No, not at all.

3             THE COURT:  Do you have any close friends or

4   relatives in any police department in Long Island or in the

5   FBI?

6             THE PROSPECTIVE JUROR:  Not at all.

7             THE COURT:  And police testimony has to be weighed

8   and gauged and scrutinized and analyzed the same as anybody

9   else's testimony.  Do you understand that?

10            THE PROSPECTIVE JUROR:  Yes.

11            THE COURT:  Have you ever been the victim of a

12   crime?

13            THE PROSPECTIVE JUROR:  No.

14            THE COURT:  Good for you.  That's good.  And have

15   you ever had any problems with the federal government?

16            THE PROSPECTIVE JUROR:  No.

17            THE COURT:  And how do you get your news?  Do you

18   watch the television?

19            THE PROSPECTIVE JUROR:  I do, yes.

20            THE COURT:  What channels?

21            THE PROSPECTIVE JUROR:  I watch Fox.

22            THE COURT:  Fox, all right.  And what newspapers do

23   you read?

24            THE PROSPECTIVE JUROR:  The Metro now and again.

25            THE COURT:  Anything else?

PROSPECTIVE JUROR 65                    490

1              THE PROSPECTIVE JUROR:  No.

2              THE COURT:  How about the Internet, do you use the

3    Internet?

4              THE PROSPECTIVE JUROR:  Yes, I do.  Sorry.

5              THE COURT:  And would you give us your promise, not

6    only me but the lawyers, particularly the defense and the

7    government, both sides, that you will not use the Internet to

8    research the case?

9              THE PROSPECTIVE JUROR:  Yes, I will.

10             THE COURT:  You promise that?

11             THE PROSPECTIVE JUROR:  Yes, I promise.

12             THE COURT:  Okay.  And can you be fair and

13   impartial?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Thank you very much.

16             THE PROSPECTIVE JUROR:  You're very welcome.

17             THE COURT:  Any challenge for cause?

18             MR. MARSHALL:  No, Your Honor.

19             MR. GOLTZER:  No.

20             THE COURT:  All right.  You are qualified as a

21   juror.  That doesn't necessarily mean they're going to pick

22   you, but you're qualified.  So if you could come back tomorrow

23   morning at 9:30 to the central jury room on the second floor.

24   Thank you very much.

25             THE PROSPECTIVE JUROR:  Okay.  You're very welcome.

PROSPECTIVE JUROR 67                    491

1              (Juror leaves.)

2              THE CLERK:  The next juror is number 67, 67.

3              MR. MARSHALL:  Your Honor, she started to give an

4    address.  I frankly didn't hear it, but to the extent there

5    was any address, portion of an address given, I would just

6    move to seal that portion of the record.

7              THE COURT:  All right.  Then that will be sealed.

8              MR. GOLTZER:  No objection.  And it wasn't specific

9    enough to identify.

10             THE COURT:  I didn't think she did, but...

11             MR. GOLTZER:  She started to give a street number,

12   but that's all, the street.

13             THE COURT:  I stopped her.  All right.  But it's

14   sealed and stricken.

15             (Juror present.)

16             THE COURT:  Good morning.

17             THE PROSPECTIVE JUROR:  Good morning.

18             THE COURT:  Have a seat.  Make yourself comfortable.

19             THE PROSPECTIVE JUROR:  Thank you.

20             THE COURT:  Sure.  And would you speak nice and loud

21   so that everybody over there by the wall can hear you.  If

22   they can hear you, then the people in the first table can, the

23   court reporter can, and I can.  Okay?

24             THE PROSPECTIVE JUROR:  Thank you.

25             THE COURT:  All right.  I don't want to know

PROSPECTIVE JUROR 67                              492

1   anybody's particular address, but I would like to know where

2   you live, what county, or if you live on the Island, what town

3   you live in.

4          THE PROSPECTIVE JUROR:  I live in Corona, Queens.

5          THE COURT:  Corona, Queens?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Okay.  And do you have your own home, or

8   do you rent an apartment?

9          THE PROSPECTIVE JUROR:  I rent.

10         THE COURT:  You rent?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  It's an apartment?

13         THE PROSPECTIVE JUROR:  An apartment building.

14         THE COURT:  And do you work outside the home?

15         THE PROSPECTIVE JUROR:  No, I don't work right now.

16         THE COURT:  Did you work?

17         THE PROSPECTIVE JUROR:  Before, yes.

18         THE COURT:  What kind of work did you do?

19         THE PROSPECTIVE JUROR:  I used to work in an

20  insurance company.

21         THE COURT:  In an insurance company?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  And what did you do there?

24         THE PROSPECTIVE JUROR:  I used to enter information

25  from the policyholders.

PROSPECTIVE JUROR 67                                      493

1           THE COURT:  Okay.  You entered information into the

2    company's records from the policyholders?

3           THE PROSPECTIVE JUROR:  Yes.

4           THE COURT:  What does your husband do for a living?

5           THE PROSPECTIVE JUROR:  He's a salesperson.

6           THE COURT:  He's a salesperson.  What does he sell?

7           THE PROSPECTIVE JUROR:  He buys cars and then he

8    sells the cars.

9           THE COURT:  He buys automobiles and then sells them?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  In other words, used cars?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  And has he been in that business for a

14   while?

15          THE PROSPECTIVE JUROR:  I would say three years.

16          THE COURT:  Three years?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  What did he do before that?

19          THE PROSPECTIVE JUROR:  Before, he used to sell --

20   he was a salesperson in a store in the city on 28th Street and

21   Broadway in Manhattan.

22          THE COURT:  What did he sell?

23          THE PROSPECTIVE JUROR:  Clothes.

24          THE COURT:  Clothes.  And do you have children?

25          THE PROSPECTIVE JUROR:  Yes, I have one.

PROSPECTIVE JUROR 67                    494

1              THE COURT:  And is that a boy or girl?

2              THE PROSPECTIVE JUROR:  A boy.

3              THE COURT:  How old is he?

4              THE PROSPECTIVE JUROR:  He's 20.  He's in college.

5              THE COURT:  Where does he go?

6              THE PROSPECTIVE JUROR:  He goes to Brockport near

7    Canada.

8              THE COURT:  A little louder.

9              THE PROSPECTIVE JUROR:  He's in Brockport.  He's in

10   college.  Brockport, B-r-o-c-k-p-o-r-t.  It's like seven hours

11   driving from New York.

12             THE COURT:  Have you ever been on a jury, ma'am?

13             THE PROSPECTIVE JUROR:  Me?

14             THE COURT:  Yes.

15             THE PROSPECTIVE JUROR:  Yes, in Jamaica.

16             THE COURT:  What kind of case?

17             THE PROSPECTIVE JUROR:  It was a lady.  She fell on

18   the snow, because the landlord --

19             THE COURT:  And she sued somebody?

20             THE PROSPECTIVE JUROR:  -- he didn't clean.  I'm

21   sorry?

22             THE COURT:  And she sued somebody?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Did you reach a verdict?  Did you reach

25   a verdict or did it settle?

SB      OCR   RMR   CRR

PROSPECTIVE JUROR 67                           495

1              THE PROSPECTIVE JUROR:  I'm sorry.  I didn't...

2              THE COURT:  Did the case reach a verdict?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Okay.  Any other service besides that?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Have you ever been the victim of a

7     crime?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Do you have any close friends or

10    relatives in the FBI or in any police department on Long

11    Island?

12             THE PROSPECTIVE JUROR:  No.

13             THE COURT:  And have you ever -- you've never been

14    the victim of a crime; right?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  Have you ever had any problems with the

17    federal government?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  In what way do you learn the news?  How

20    do you learn the news?

21             THE PROSPECTIVE JUROR:  I watch channel 1, 7, 2.

22    Any channel, you know.

23             THE COURT:  And do you read the newspaper?

24             THE PROSPECTIVE JUROR:  Not that much.

25             THE COURT:  Not much.  And how about the Internet,

PROSPECTIVE JUROR 67                          496

1    do you use the Internet?

2              THE PROSPECTIVE JUROR:  Once in a while.

3              THE COURT:  Once in a while?

4              THE PROSPECTIVE JUROR:  Not every day.

5              THE COURT:  Do we have your promise that you won't

6    use the Internet to research this case?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  You won't?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  And we have your promise?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  All right.  And can you be fair and

13   impartial?

14             THE PROSPECTIVE JUROR:  I'm sorry?

15             THE COURT:  Can you be fair --

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  -- and impartial?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Any challenge for cause?

20             MR. MARSHALL:  No, Your Honor.

21             MR. GOLTZER:  No, sir.

22             THE COURT:  So you're qualified for service, and if

23   you'd come back tomorrow morning at 9:30 to the central jury

24   room on the second floor.  Tomorrow morning, 9:30.  Thank you.

25             THE PROSPECTIVE JUROR:  Okay.  Thank you.

PROSPECTIVE JUROR 67                           497

1            THE COURT:  Thank you.

2            THE CLERK:  I believe the juror wants to say

3     something, Judge.

4            THE PROSPECTIVE JUROR:  I have appointments.

5            THE COURT:  You have what?

6            THE PROSPECTIVE JUROR:  Appointments for the doctor.

7            THE COURT:  When?

8            THE PROSPECTIVE JUROR:  Right now.  One is -- this

9     one is January 21st, 2014.  This one --

10           THE COURT:  What time?

11           THE PROSPECTIVE JUROR:  This one is 8:00.

12           THE COURT:  8:00 in the morning?

13           THE PROSPECTIVE JUROR:  Yes.

14           THE COURT:  That's fine.  No problem.

15           THE PROSPECTIVE JUROR:  And the other one is

16    February --

17           THE COURT:  Where is the doctor?

18           THE PROSPECTIVE JUROR:  Elmhurst Hospital in Queens.

19           THE COURT:  Okay.  8:00 in the morning.  Remind --

20           THE PROSPECTIVE JUROR:  January 21st.

21           THE COURT:  If you're chosen as a juror, remind us

22    on -- the 21st I think is a Tuesday.

23           THE CLERK:  Yes.

24           THE COURT:  Okay.  Remind us that Monday you've got

25    the appointment.

PROSPECTIVE JUROR 67                    498

1                THE CLERK:  I'm sorry, that may be Martin Luther

2      King Day.

3                THE COURT:  Remind us that Friday or Thursday.

4      Remind us Thursday, the 16th, that you have the appointment,

5      and we'll call to make sure they take you at 8:00.

6                Okay, what's the other appointment?

7                THE PROSPECTIVE JUROR:  The other one is February

8      5th, 2014.

9                THE COURT:  I think February 5th, you don't have

10     anything to worry about.

11               THE PROSPECTIVE JUROR:  Okay.  And the other one is

12     the same date, two appointments.

13               MR. GOLTZER:  Would Your Honor just ask the juror,

14     in private if you'd like, whether there's a medical issue that

15     would be distracting, a medical issue of concern that might be

16     distracting during the trial.

17               THE COURT:  Well, I mean, is your medical condition

18     such that it's going to affect your service?

19               THE PROSPECTIVE JUROR:  The thing is that I suffer

20     from like my thyroid, and sometimes, like today, my voice is

21     not that clear.

22               THE COURT:  I can hear you pretty well and I think

23     the court reporter can.

24               THE PROSPECTIVE JUROR:  I was trying to do my best.

25               THE COURT:  It's not as bad as my voice today.

PROSPECTIVE JUROR 35                              499

1   Okay, thank you very much.

2           THE PROSPECTIVE JUROR:  Okay, so tomorrow?

3           THE COURT:  Tomorrow.  There's no challenge for

4   cause; correct?

5           MR. MARSHALL:  No, Your Honor.

6           MR. GOLTZER:  No, sir.

7           THE COURT:  Tomorrow 9:30.  Thank you very much.

8   Central jury room.

9           (Juror leaves.)

10          THE CLERK:  The next juror is number 35, 35.

11          MR. GOLTZER:  We just wanted to make sure she wasn't

12  facing some emergency.

13          THE COURT:  Fine.

14          (Juror present.)

15          THE COURT:  Good morning, sir.

16          THE PROSPECTIVE JUROR:  Good morning.

17          THE COURT:  Okay.  Would you speak in a nice loud

18  voice so that everybody over there at the far wall can hear

19  you.

20          THE PROSPECTIVE JUROR:  Certainly.

21          THE COURT:  Okay.  I don't want to know your

22  address, but I would like to know what area you live in.

23          THE PROSPECTIVE JUROR:  I live in Nassau County.

24          THE COURT:  You live in Nassau County.  And a little

25  louder for them.  And where in Nassau County do you live, what

PROSPECTIVE JUROR 35                          500

1   town?

2              THE PROSPECTIVE JUROR:  I live in Levittown.

3              THE COURT:  Levittown.  Do you own your own home out

4   there?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  And are you married?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  And how long have you had the home?

9              THE PROSPECTIVE JUROR:  Since 2000.  So 13 years.

10             THE COURT:  Thirteen years.  And what do you do for

11  a living, sir?

12             THE PROSPECTIVE JUROR:  I work for an outsourcing

13  company that provides labor to mailroom and copy centers for

14  large Wall Street banks and law firms.

15             THE COURT:  Okay.  How long have you been doing

16  that?

17             THE PROSPECTIVE JUROR:  About 21 years.

18             THE COURT:  Okay.  And what is your educational

19  background?

20             THE PROSPECTIVE JUROR:  I have a bachelor's in

21  political science, and I have a master's in information

22  sciences.

23             THE COURT:  And where did you get your bachelor's

24  degree?

25             THE PROSPECTIVE JUROR:  I got my bachelor's from

PROSPECTIVE JUROR 35                    501

1    Baruch College, and my master's from Long Island University.

2              THE COURT:  And have you ever heard of this case

3    before Monday?

4              THE PROSPECTIVE JUROR:  No, I have not.

5              THE COURT:  Have you ever been on a jury before?

6              THE PROSPECTIVE JUROR:  Yes, I have.

7              THE COURT:  Criminal case or civil case or both?

8              THE PROSPECTIVE JUROR:  One time.  It was a criminal

9    case in this building.

10             THE COURT:  One time, it was a criminal case, and?

11             THE PROSPECTIVE JUROR:  It was in this building.

12             THE COURT:  In this building?

13             THE PROSPECTIVE JUROR:  Yes, it was in the Eastern

14   District.

15             THE COURT:  And do you remember what the charge was?

16   I don't want to know the verdict, but the charge.  Was it

17   drugs?  Was it --

18             THE PROSPECTIVE JUROR:  It was an immigration case.

19             THE COURT:  An immigration case?

20             THE PROSPECTIVE JUROR:  Brought by the INS.  Yes.

21             THE COURT:  Brought by the INS?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  And how many people were on the jury?

24             THE PROSPECTIVE JUROR:  If my memory serves me

25   correctly, it was 12, with two alternates.

1          THE COURT:  I see.  And you reached a verdict?

2          THE PROSPECTIVE JUROR:  Yes, we did.

3          THE COURT:  And that's the only service you've had?

4          THE PROSPECTIVE JUROR:  Correct.

5          THE COURT:  Okay.  In this case, the case we're

6     going to try, you're going to hear some tapes that are going

7     to be played, and some of the language on the tapes is pretty

8     raw.  Do you understand what I mean?

9          THE PROSPECTIVE JUROR:  (Nods head affirmatively.)

10          THE COURT:  Would that affect your service?

11          THE PROSPECTIVE JUROR:  No, I don't believe so, Your

12     Honor.

13          THE COURT:  Okay.  And have you ever had any

14     problems with the federal government of any sort?

15          THE PROSPECTIVE JUROR:  No, I have not.

16          THE COURT:  And have you ever been the victim of a

17     crime?

18          THE PROSPECTIVE JUROR:  Thankfully, I have not.

19          THE COURT:  And how do you get the news when you --

20     do you read the newspaper?  Do you watch television?  How do

21     you get the news?

22          THE PROSPECTIVE JUROR:  Probably a mixture.  I get

23     the newspapers at home on the weekends, which is really the

24     only time I have to read the newspapers.

25          THE COURT:  And do you watch television?

PROSPECTIVE JUROR 35                                      503

1          THE PROSPECTIVE JUROR:  I do.  I don't watch a lot

2    of news channels.

3          THE COURT:  How about the Internet, do you use the

4    Internet?

5          THE PROSPECTIVE JUROR:  I do for my job.  And I'll

6    check in on the news there usually on a daily basis for maybe

7    five minutes.

8          THE COURT:  And will you promise us, give us your

9    assurance that you won't use the Internet to look up anything

10   about this case or to research the case?  Do we have your

11   promise about that?

12         THE PROSPECTIVE JUROR:  Yes, you do.

13         THE COURT:  Okay.  And do you have any close friends

14   or relatives in the FBI or in any Long Island police

15   department?

16         THE PROSPECTIVE JUROR:  I do not.

17         THE COURT:  And is there any reason that you

18   couldn't be fair and impartial?

19         THE PROSPECTIVE JUROR:  No, there's not.

20         THE COURT:  Any challenge for cause?

21         MR. GOLTZER:  No, sir.

22         MR. MARSHALL:  No, Your Honor.  I thought -- maybe I

23   misunderstood, but perhaps there was additional jury service

24   that we didn't cover and I wondered if Your Honor could ask.

25         THE COURT:  Additional jury --

PROSPECTIVE JUROR 35                    504

1              MR. MARSHALL:  Yes, in addition to the criminal

2    case.

3              THE COURT:  Did you serve?

4              THE PROSPECTIVE JUROR:  No.  I had one criminal

5    case.

6              THE COURT:  He just served on the one case.  I

7    thought that's what he said.  Okay.  No challenge for cause?

8              MR. MARSHALL:  No, Your Honor.

9              MR. GOLTZER:  No.

10             THE COURT:  All right.  You are qualified, sir.

11   What that means is that you come back tomorrow morning at 9:30

12   and go to the central jury room on the second floor tomorrow

13   morning, 9:30.  Thank you very much.  You are excused for the

14   day.

15             THE PROSPECTIVE JUROR:  Thank you very much, Your

16   Honor.

17             THE COURT:  Thank you.

18             (Juror leaves.)

19             MR. GOLTZER:  Could he be asked to wait for a moment

20   outside.  We need to place something on the record.  You may

21   want to call him back.

22             THE COURT:  Have a seat there, sir.

23             THE PROSPECTIVE JUROR:  Right there?

24             THE COURT:  Yes.  Come over to side bar.

25             (The following occurred at side bar.)

PROSPECTIVE JUROR 68                                    505

1              MR. BACHRACH:  Your Honor, it's a similar issue,

2    it's a similar issue as before, but not as bad.  Mr. Romano

3    informs us that he does recognize this juror because they live

4    in the same town.  He's seen him many times, but he can't

5    place him individually anywhere.  He hasn't heard an address,

6    but we wanted to bring it to the Court's attention.

7              THE COURT:  Thank you.  Okay.

8              MR. GOLTZER:  I'm not sure it's an issue, but...

9              THE COURT:  Thank you.

10             (End of side bar.)

11             THE COURT:  All right.  Thank you very much.

12   Tomorrow morning, 9:30.

13             (Juror leaves.)

14             THE CLERK:  The next juror is 68, number 68.

15             (Juror present.)

16             THE PROSPECTIVE JUROR:  Good morning.

17             THE COURT:  Good morning.  How are you?

18             THE PROSPECTIVE JUROR:  Well, thank you.

19             THE COURT:  Good.  Will you speak nice and loud so

20   that everybody over there can hear you?

21             THE PROSPECTIVE JUROR:  Okay.

22             THE COURT:  See them all over there by the wall?

23   You talk to them.

24             THE PROSPECTIVE JUROR:  All right.

25             THE COURT:  Okay, that's good.  That's nice.  Keep

PROSPECTIVE JUROR 68                                506

1    it up like that.  Good.

2              THE PROSPECTIVE JUROR:  Okay.

3              THE COURT:  I don't want to know your address, but I

4    would like to know what area you live in.  So where do you

5    live, basically?

6              THE PROSPECTIVE JUROR:  Clinton Hill.  Clinton Hill.

7              THE COURT:  Clinton Hill, okay.  And how long have

8    you lived there, about?

9              THE PROSPECTIVE JUROR:  About 25 years.

10             THE COURT:  Twenty-five years.  And do you have an

11   apartment there or do you have a house?

12             THE PROSPECTIVE JUROR:  I have a co-op.

13             THE COURT:  Co-op, okay.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  And are you married?

16             THE PROSPECTIVE JUROR:  No, I'm not.

17             THE COURT:  What do you do for a living?

18             THE PROSPECTIVE JUROR:  I am a guidance counselor,

19   school guidance counselor.  I'm a school guidance counselor.

20             THE COURT:  Oh, a school guidance counselor.  And at

21   what level?  When I say what level, I mean what grade level,

22   or is it high school?

23             THE PROSPECTIVE JUROR:  Elementary school.

24             THE COURT:  Elementary school.  And how long have

25   you been doing that?

SB     OCR   RMR   CRR

PROSPECTIVE JUROR 68                          507

1           THE PROSPECTIVE JUROR:  Twenty-nine years.

2           THE COURT:  Okay.  And your educational background?

3           THE PROSPECTIVE JUROR:  Yes.  I have a master's in

4     guidance, in counseling.

5           THE COURT:  And where did you get the master's from?

6           THE PROSPECTIVE JUROR:  Brooklyn College.

7           THE COURT:  And where did you go undergraduate?

8           THE PROSPECTIVE JUROR:  Brooklyn College.

9           THE COURT:  Okay.  And have you ever been on a jury

10    before?

11          THE PROSPECTIVE JUROR:  I've never been on a jury

12    before.

13          THE COURT:  Now, you're going to hear some bad

14    language if you're chosen on the tape-recordings that we're

15    going to play for you.  Would that affect your service?

16          THE PROSPECTIVE JUROR:  It can't be any worse than

17    what I hear at school.

18          THE COURT:  It can't be worse than what you hear at

19    school.  Unfortunately, I thought that might be the answer.

20    All right.

21          Do you have any close friends or representatives in

22    the FBI or in any police department on Long Island?

23          THE PROSPECTIVE JUROR:  No, I do not.

24          THE COURT:  Okay.  Have you ever been the victim of

25    a crime?

PROSPECTIVE JUROR 68                          508

1          THE PROSPECTIVE JUROR:  I believe when I was about

2     maybe 16.

3          THE COURT:  Sixteen?

4          THE PROSPECTIVE JUROR:  Uh-huh.

5          THE COURT:  What happened?

6          THE PROSPECTIVE JUROR:  Someone took my pocket from

7     me -- my pocketbook from me.

8          THE COURT:  Pocketbook?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Okay.  That wouldn't affect your service

11    here, would it?

12         THE PROSPECTIVE JUROR:  No, it wouldn't.

13         THE COURT:  Okay.  And have you been on a jury?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Never?

16         THE PROSPECTIVE JUROR:  Never.

17         THE COURT:  And have you ever had any problems with

18    the federal government?

19         THE PROSPECTIVE JUROR:  No, never.

20         THE COURT:  Good.  And some people do; that's why

21    they have me ask the question.

22         All right.  What is your source of getting the news?

23    How do you get the news?

24         THE PROSPECTIVE JUROR:  I usually listen to it on

25    television.

PROSPECTIVE JUROR 68                    509

1          THE COURT:  Which station or channel?

2          THE PROSPECTIVE JUROR:  CNN.

3          THE COURT:  And do you read the newspapers?

4          THE PROSPECTIVE JUROR:  I stopped reading the

5     newspapers about two years ago.

6          THE COURT:  And do you use the Internet?

7          THE PROSPECTIVE JUROR:  I do use the Internet.  I

8     have to for my job.

9          THE COURT:  Right.  Well, so far as this case is

10    concerned, does everybody here have your promise that you

11    won't use the Internet to research the case?

12         THE PROSPECTIVE JUROR:  Definitely, I will not.

13         THE COURT:  You will not.  Good for you.  All right.

14    And do you think you can be fair and impartial?

15         THE PROSPECTIVE JUROR:  I believe I can be.

16         THE COURT:  Okay.  Any challenge for cause?

17         MR. MARSHALL:  No, Your Honor.

18         MR. GOLTZER:  No.

19         THE COURT:  All right.  You are qualified, ma'am.

20    Thank you very much.  Come back tomorrow morning at 9:30 to

21    the central jury room.  You are excused for the day.  Thank

22    you again very much.

23         THE PROSPECTIVE JUROR:  Thank you.

24         THE COURT:  Watch your step getting down.

25         (Juror leaves.)

PROSPECTIVE JUROR 74                                510

1              THE CLERK:  The next juror is number 74, 74.

2              (Juror present.)

3              THE COURT:  Good morning.

4              THE PROSPECTIVE JUROR:  Good morning.  How are you?

5              THE COURT:  How are you?

6              THE PROSPECTIVE JUROR:  I'm fine, thank you.

7              THE COURT:  Good.  Would you speak nice and loud so

8    that everybody over there against the wall can hear you.  If

9    they hear you, then everybody in the room can hear you.

10             THE PROSPECTIVE JUROR:  Can you hear me?

11             THE COURT:  That's good.  That was perfect.  I don't

12   want to know your address, but could you tell us what area you

13   live in?

14             THE PROSPECTIVE JUROR:  In Brownsville.

15             THE COURT:  Brownsville?

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Okay.  You've lived there for several

18   years?

19             THE PROSPECTIVE JUROR:  I lived there almost three

20   years now.

21             THE COURT:  Where did you live before that?

22             THE PROSPECTIVE JUROR:  Snyder, which is like East

23   Flatbush.

24             THE COURT:  Okay, in East Flatbush?

25             THE PROSPECTIVE JUROR:  Yes.

SB      OCR   RMR   CRR

PROSPECTIVE JUROR 74                          511

1          THE COURT:  And do you have an apartment in

2     Brownsville?

3          THE PROSPECTIVE JUROR:  Yes, I do.

4          THE COURT:  And are you married or single?

5          THE PROSPECTIVE JUROR:  I'm single.

6          THE COURT:  And what do you do for a living?

7          THE PROSPECTIVE JUROR:  I am a medical biller at a

8     hospital.

9          THE COURT:  And how long have you been doing that?

10         THE PROSPECTIVE JUROR:  For -- going to be four

11    years.

12         THE COURT:  And before that, were you in school?

13         THE PROSPECTIVE JUROR:  Before that, I was actually

14    dental assistant/Army in between all that.  But dental

15    assistant for four years.  I was in the Army as well.

16         THE COURT:  You were in the Army?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  And what rank did you get?

19         THE PROSPECTIVE JUROR:  I was E-4, which is a

20    specialist.

21         THE COURT:  Okay.  And what part of the Army were

22    you in?  I mean, you weren't in the Infantry?

23         THE PROSPECTIVE JUROR:  No.  The title, it was

24    actually a civil affairs specialist.

25         THE COURT:  Civil affairs specialist?

SB      OCR   RMR   CRR

PROSPECTIVE JUROR 74                                512

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  And how long were you in?

3          THE PROSPECTIVE JUROR:  I feel ashamed to say.  Less

4     than a year.

5          THE COURT:  Less than a year?

6          THE PROSPECTIVE JUROR:  Yes.  I got injured and I

7     got a discharge, honorable discharge.  Yeah.

8          THE COURT:  But you made Spec 4?

9          THE PROSPECTIVE JUROR:  Yes, because I have a

10    degree.  So they automatically put you at a particular level.

11    I could have gone officer if I knew.

12         THE COURT:  What say?

13         THE PROSPECTIVE JUROR:  I could have gone officer if

14    I knew that.  Once you have a degree, you can go strictly to

15    officer.  So...

16         THE COURT:  Have you ever been on a jury before?

17         THE PROSPECTIVE JUROR:  No.  This is my first and

18    hopefully last time.

19         THE COURT:  All right.

20         THE PROSPECTIVE JUROR:  I did the state, but that's

21    when you just wait downstairs.  They never really call you,

22    and that was it.  But never as a juror before.

23         THE COURT:  You were called for jury service, but

24    you never served; is that it?

25         THE PROSPECTIVE JUROR:  Right.  You just like how

PROSPECTIVE JUROR 74                                513

1   they are downstairs waiting and you're never called and you

2   just get a piece of paper saying, okay, you're good.  So yeah.

3                  THE COURT:  Well, you got further along this time.

4                  THE PROSPECTIVE JUROR:  Yes.  Lucky me.

5                  THE COURT:  Now, did you ever hear of this case

6   before Monday?

7                  THE PROSPECTIVE JUROR:  No.  But I -- well, before

8   Monday, no, but I saw it in the papers.

9                  THE COURT:  What?

10                 THE PROSPECTIVE JUROR:  I saw it in the papers.

11                 THE COURT:  When?

12                 THE PROSPECTIVE JUROR:  Yesterday.

13                 THE COURT:  Okay.  Well, don't read anything about

14  it.

15                 THE PROSPECTIVE JUROR:  I didn't mean to.  I came

16  across it.  It was in the Daily News.

17                 THE COURT:  It was in the Daily News?

18                 THE PROSPECTIVE JUROR:  Yes.

19                 THE COURT:  Okay.  I didn't know that.

20                 THE PROSPECTIVE JUROR:  Yes, yesterday's date.

21                 THE COURT:  If there's anything else in the paper

22  about it, don't read it.

23                 THE PROSPECTIVE JUROR:  Okay.

24                 THE COURT:  All right?  Do you use the Internet?

25                 THE PROSPECTIVE JUROR:  Yes.

PROSPECTIVE JUROR 74                    514

1          THE COURT:  Do we have your promise you won't use

2     the Internet to research the case?

3          THE PROSPECTIVE JUROR:  No.  No, sir.  No.

4          THE COURT:  We have your promise?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  You're sure of that?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  All right.  That's very important.

9          THE PROSPECTIVE JUROR:  Uh-huh.

10         THE COURT:  Do you have any close friends or

11    relatives in the FBI?

12         THE PROSPECTIVE JUROR:  No, I do not.

13         THE COURT:  How about in the police department

14    anywhere?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Where?

17         THE PROSPECTIVE JUROR:  I have a cousin.  He is NYPD

18    in Brooklyn.

19         THE COURT:  In Brooklyn?

20         THE PROSPECTIVE JUROR:  Uh-huh.

21         THE COURT:  All right.  Well, there won't be any

22    Brooklyn policemen testifying.  There may be police officers

23    from Nassau County or Suffolk County testifying.  And the

24    police officers and the FBI agents, you've got to analyze

25    their testimony the same as you do everybody else's.

PROSPECTIVE JUROR 74                          515

1           THE PROSPECTIVE JUROR:  Right.

2           THE COURT:  In other words, just because they're a

3    policeman, it doesn't mean they're lying, it doesn't mean

4    they're telling the truth.

5           THE PROSPECTIVE JUROR:  Right.

6           THE COURT:  You got to gauge everybody as an

7    individual.

8           THE PROSPECTIVE JUROR:  Right.

9           THE COURT:  Any problem with that?

10          THE PROSPECTIVE JUROR:  No, no.

11          THE COURT:  Okay.  Have you ever been the victim of

12   a crime?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  And have you ever had -- well, you were

15   in the Army.  Did you ever have any problems with the federal

16   government?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  And in the case, the likelihood is that

19   you're going to hear tape-recordings; and on some of the

20   tape-recordings, the language isn't so nice.  Do you

21   understand what I mean?

22          THE PROSPECTIVE JUROR:  Right, right, right.

23          THE COURT:  Is that going to affect you?

24          THE PROSPECTIVE JUROR:  You want me to be honest?

25          THE COURT:  What?

PROSPECTIVE JUROR 74                              516

1          THE PROSPECTIVE JUROR:  You want me to be honest?

2          THE COURT:  Yes.

3          THE PROSPECTIVE JUROR:  It might, because I have

4   virgin ears.

5          THE COURT:  You got what?

6          THE PROSPECTIVE JUROR:  Well, it's called virgin

7   ears.  Like we don't like to hear cursing and stuff.  And I'm

8   Christian, so I don't like to expose myself to that.

9          THE COURT:  But you were in the Army.

10         THE PROSPECTIVE JUROR:  I know, so that's why I was

11  praying to get out.  I felt tainted.

12         THE COURT:  You heard plenty of cursing in the Army;

13  right?

14         THE PROSPECTIVE JUROR:  Yeah.  But I try to refrain

15  from that kind of environment, to be honest.

16         THE COURT:  Well, I understand you don't like bad

17  language.

18         THE PROSPECTIVE JUROR:  Right.

19         THE COURT:  But that has nothing to do with the

20  question of whether somebody is guilty or not.

21         THE PROSPECTIVE JUROR:  Right, right.  Yeah.

22         THE COURT:  And would the bad language make you

23  think somebody was guilty?

24         THE PROSPECTIVE JUROR:  No, no, no.

25         THE COURT:  Are you sure of that?

PROSPECTIVE JUROR 74                     517

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  So you can be fair and impartial?

3              THE PROSPECTIVE JUROR:  I can be fair.  I'll have to

4    pray after.

5              THE COURT:  What?

6              THE PROSPECTIVE JUROR:  I said I'll have to pray

7    after, Lord, clean my ears.  But I would be fair, yeah.

8              THE COURT:  The big part and the point that I want

9    to make sure of is that because somebody used bad language,

10   that doesn't mean --

11             THE PROSPECTIVE JUROR:  Yeah.

12             THE COURT:  -- that they're guilty?

13             THE PROSPECTIVE JUROR:  Yes.  It doesn't make

14   anybody a bad person.  Right.

15             THE COURT:  It doesn't mean you're a bad person?

16             THE PROSPECTIVE JUROR:  No.  You just have a limited

17   vocabulary; that's how I put it.

18             THE COURT:  And you can be fair?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  All right.  Any challenge for cause?

21             MR. MARSHALL:  No, Your Honor.  I wonder if you

22   could just ensure that whatever might have been read in the

23   Daily News wouldn't affect her in any way.

24             THE COURT:  I assume that what you read in the paper

25   isn't going to affect your service here, is it?

PROSPECTIVE JUROR 74                    518

1          THE PROSPECTIVE JUROR:  I'm not sure about that.

2          THE COURT:  You're not.  Why?

3          THE PROSPECTIVE JUROR:  Because it looked pretty

4    bad.  I'm sorry.

5          THE COURT:  Well, if you think it's going to affect

6    your service, we'll excuse you.  You're excused.  Thank you.

7          THE PROSPECTIVE JUROR:  I'm sorry.

8          THE COURT:  That's all right.

9          THE CLERK:  Report to the central jury room on the

10   second floor and let them know that you've been excused.

11         (Juror leaves.)

12         THE CLERK:  The next juror is number 25.  25.

13         MR. GOLTZER:  Your Honor, I just Googled the Daily

14   News to see if I could find the recent article from yesterday,

15   and I didn't.  There are old articles on the Internet, which

16   may be the issue.

17         MR. MARSHALL:  There was also something in Newsday,

18   I think, but I don't know.  Maybe she got the --

19         MR. GOLTZER:  Newsday, we knew about, but I didn't

20   see anything in the News.

21         THE COURT:  I didn't know there was anything in the

22   Daily News.  I know one of my law clerks got something out of

23   the Law Journal.  I haven't gotten the Law Journal over here,

24   but there was something in the Law Journal, but I don't think

25   we've got any problems with the Law Journal.

PROSPECTIVE JUROR 25                                519

1              (Juror present.)

2              THE COURT:  Hello.  How are you?

3              THE PROSPECTIVE JUROR:  Fine.

4              THE COURT:  Would you have a seat, please.  And

5    would you speak nice and loud.  As a matter of fact, why don't

6    you try looking at the gentleman at the end of the table there

7    that just waved his hand, Mr. Goltzer.  Try and look over at

8    him and talk to him.  And that way, if you talk to him, we'll

9    all hear you.  Okay?

10             THE PROSPECTIVE JUROR:  Okay.

11             THE COURT:  All right.  And I don't want to know

12   your address, but I want to know what area you live in.  Where

13   do you live?

14             THE PROSPECTIVE JUROR:  I live --

15             THE COURT:  A little louder.

16             THE PROSPECTIVE JUROR:  I live near Gravesend.

17             THE COURT:  Near where?

18             THE PROSPECTIVE JUROR:  Gravesend, Brooklyn.

19             THE COURT:  Gravesend in Brooklyn?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Okay.  And do you have an apartment

22   there or a home?

23             THE PROSPECTIVE JUROR:  An apartment.

24             THE COURT:  Apartment.  And do you rent it or is it

25   a co-op?

PROSPECTIVE JUROR 25                          520

1           THE PROSPECTIVE JUROR:  It is rent.

2           THE COURT:  Rent?

3           THE PROSPECTIVE JUROR:  Yes.

4           THE COURT:  And are you married or single?

5           THE PROSPECTIVE JUROR:  Single.

6           THE COURT:  And what do you do for a living?

7           THE PROSPECTIVE JUROR:  I am currently unemployed.

8  I just am a recent college graduate, so...

9           THE COURT:  Where did you go to college?

10          THE PROSPECTIVE JUROR:  University at Albany, SUNY.

11          THE COURT:  SUNY, Albany?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  And what did you major in in Albany?

14          THE PROSPECTIVE JUROR:  Japanese studies.

15          THE COURT:  Japanese studies?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Do you speak Japanese?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  And are you looking for work?

20          THE PROSPECTIVE JUROR:  Currently, yes.

21          THE COURT:  What kind of work are you looking for?

22          THE PROSPECTIVE JUROR:  Internships, part-time work,

23  something that has to do with my specialty.  I work in -- I

24  have some experience working with bookstores.

25          THE COURT:  Bookstores?

PROSPECTIVE JUROR 25                          521

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  All right.  And when did you graduate

3     from college, last June or May?

4          THE PROSPECTIVE JUROR:  I actually graduated in June

5     of 2012.

6          THE COURT:  Have you worked since June of 2012?

7          THE PROSPECTIVE JUROR:  On and off, part time.

8          THE COURT:  And was it in bookstores?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  And do you live alone?

11         THE PROSPECTIVE JUROR:  No.  I live with my mother

12    and my brother.

13         THE COURT:  Your mother and your brother.  Is your

14    brother grown?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  What does he do for a living?

17         THE PROSPECTIVE JUROR:  He's currently right now

18    still in college, working towards a degree, another degree.

19         THE COURT:  He's working towards a degree?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  And does your mother work?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  What does she do?

24         THE PROSPECTIVE JUROR:  She is a copy editor in a

25    book publishing company.

PROSPECTIVE JUROR 25                            522

1           THE COURT:  For a newspaper?

2           THE PROSPECTIVE JUROR:  No, for a publishing

3    company.

4           THE COURT:  Publishing company.  And is your father

5    alive?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  And are your mother and he separated?

8           THE PROSPECTIVE JUROR:  Yes.  They were divorced --

9           THE COURT:  They're divorced?

10          THE PROSPECTIVE JUROR:  -- in two-thousand-and --

11          THE COURT:  And what does he do for a living, if you

12   know?

13          THE PROSPECTIVE JUROR:  He is retired.

14          THE COURT:  He's retired?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  And what did he do?

17          THE PROSPECTIVE JUROR:  He was the manager for a

18   boiler and heating company.

19          THE COURT:  Boiler and engineering company, okay.

20          And have you ever been on a jury before?

21          THE PROSPECTIVE JUROR:  No, I have not.

22          THE COURT:  And did you ever hear of this case

23   before Monday?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  And have you read anything about the

PROSPECTIVE JUROR 25                          523

1   case?

2           THE PROSPECTIVE JUROR:  No.

3           THE COURT:  And in the case, you're going to hear

4   certain tapes if you're chosen as a juror.  On some of the

5   tapes, the language is a little rough.  Would that affect your

6   service in any way?

7           THE PROSPECTIVE JUROR:  No, I don't believe it

8   would.

9           THE COURT:  Okay.  And have you ever been the victim

10  of a crime?

11          THE PROSPECTIVE JUROR:  I don't believe -- not

12  directly, no.  No.

13          THE COURT:  When you say not directly, I'm not sure

14  I know what you mean.

15          THE PROSPECTIVE JUROR:  Well, it's -- my family is

16  close and --

17          THE COURT:  What say?

18          THE PROSPECTIVE JUROR:  My family and I are close.

19  And, well, for example, they own a small business, actually,

20  and they were recently -- they had -- were given a false

21  hundred dollar bill, and --

22          THE COURT:  A counterfeit bill?

23          THE PROSPECTIVE JUROR:  Yes, actually.  And, you

24  know, and that really affected their day's profits, because

25  they don't make that much per day.  So it -- I mean, it wasn't

PROSPECTIVE JUROR 25                        524

1   me personally, but --

2           THE COURT:  But it was your mother?

3           THE PROSPECTIVE JUROR:  It was my grandmother and my

4   uncle.

5           THE COURT:  Your grandmother?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  And what kind of business is she in?

8           THE PROSPECTIVE JUROR:  Theirs is actually book

9   selling.  That's where I had worked.

10          THE COURT:  I see, book selling.

11          THE PROSPECTIVE JUROR:  I've been helping out my

12  family.

13          THE COURT:  And it's an independent bookstore?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And was the receipt of the counterfeit

16  hundred dollar bill mentioned to the police or the law

17  enforcement?

18          THE PROSPECTIVE JUROR:  No.  Because there was no

19  receipt that had been generated, so we couldn't report it.

20  And we weren't just hit.  I think the place next to us was hit

21  as well.  I don't know why or when, but it just happened,

22  so...

23          THE COURT:  Would that affect your service in any

24  way?

25          THE PROSPECTIVE JUROR:  I don't -- I don't know.  I

PROSPECTIVE JUROR 25                    525

1    mean, it would depend.  I don't think so, but...

2            THE COURT:  Why should it?

3            THE PROSPECTIVE JUROR:  I mean, I'm not sure.

4            THE COURT:  There's no charge of counterfeiting

5    here.

6            THE PROSPECTIVE JUROR:  Yes, that's true.

7            THE COURT:  All right.  Now, let me ask you this:

8    Do you have any close friends or relatives in the police

9    department out in Long Island anywhere, or in the FBI?

10           THE PROSPECTIVE JUROR:  No.

11           THE COURT:  And have you ever been the victim of a

12   crime yourself?  You told us about your grandmother.  Now, how

13   about yourself?

14           THE PROSPECTIVE JUROR:  No.  Myself?  I don't

15   believe so, no.

16           THE COURT:  Okay.  Did you ever have any problems

17   with the federal government?

18           THE PROSPECTIVE JUROR:  No.

19           THE COURT:  Do you use the Internet?

20           THE PROSPECTIVE JUROR:  Yes.

21           THE COURT:  And do you promise us that you won't use

22   the Internet in connection with this case?

23           THE PROSPECTIVE JUROR:  Yes, I can promise that.

24           THE COURT:  And you won't look up the case on the

25   Internet or research the case?

PROSPECTIVE JUROR 25                        526

1              THE PROSPECTIVE JUROR:  No, I will not.

2              THE COURT:  And you've never read anything about

3     this case?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Or heard anything on television about

6     it?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  And do you think you can be fair and

9     impartial?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  Any challenge for cause?

12             MR. GOLTZER:  Would Your Honor follow up on the

13    issue of fraud surfacing in this case?

14             THE COURT:  The counterfeit?

15             MR. GOLTZER:  No, no, fraud surfacing in this case

16    and the effect it might have on this juror because of her

17    experience.

18             THE COURT:  You heard what he said?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Tell us.

21             THE PROSPECTIVE JUROR:  Well, it's fairly recent.

22    In fact, I was informed by my grandmother and uncle that they

23    hadn't actually encountered anything like that in their 35

24    years of owning the store and operating it until just

25    literally a few weeks ago.  And it came as a bit of a shock to

PROSPECTIVE JUROR 25                    527

1  them, because it only was a $20 bill.  Many of our customers

2  prefer to sometimes give us hundred dollar bills, so it was

3  just something that we considered normal.  And it was

4  unfortunate that that had happened, but...

5           THE COURT:  Well, it certainly is unfortunate, yes.

6           THE PROSPECTIVE JUROR:  Yes.  And they got -- I

7  think the difference in the cost between the actual book and

8  it was -- they had lost about $80, which can be quite

9  substantial in bookstore sales, especially nowadays.  So it

10 really was dreadful, but they took it and they took the loss,

11 and...

12          THE COURT:  How old is your grandmother?

13          THE PROSPECTIVE JUROR:  She's actually in her about

14 mid-eighties.

15          THE COURT:  Okay.

16          MR. GOLTZER:  We have an issue unless the Court

17 wants to further follow up.

18          MR. MARSHALL:  We would consent.

19          THE COURT:  What say?

20          MR. MARSHALL:  I think we would be in agreement, if

21 I understand Mr. Goltzer.

22          THE COURT:  You're going to consent to excusing the

23 juror?

24          MR. MARSHALL:  Yes.

25          THE COURT:  We'll excuse you.  Thank you very much.

PROSPECTIVE JUROR 47                    528

1          MR. GOLTZER:  Thank you, Judge; thank you, juror;
2     and thank you, government.
3          THE COURT:  You're excused, ma'am.  Thank you.
4          THE CLERK:  Report to the central jury room on the
5     second floor.
6          (Juror leaves.)
7          THE CLERK:  The next juror is number 47, 47.
8          (Juror present.)
9          THE COURT:  Good morning, sir.
10         THE PROSPECTIVE JUROR:  Good morning.
11         THE COURT:  Have a seat.  Make yourself at home.
12    And would you talk nice and loud so that the people over there
13    against the wall can hear you.  Okay?
14         THE PROSPECTIVE JUROR:  Okay.
15         THE COURT:  Look at them.  I don't want to know your
16    address, but could you tell us what area you live in?
17         THE PROSPECTIVE JUROR:  Kings County.
18         THE COURT:  In?
19         THE PROSPECTIVE JUROR:  Kings County.
20         THE COURT:  Kings County.  And do you have a home
21    there or do you rent?
22         THE PROSPECTIVE JUROR:  Rent.
23         THE COURT:  You rent.  Is it an apartment?
24         THE PROSPECTIVE JUROR:  House.
25         THE COURT:  House.  And are you married or single?

SB     OCR   RMR   CRR

```
                   PROSPECTIVE JUROR 47                      529

 1              THE PROSPECTIVE JUROR:  Married.

 2              THE COURT:  You're married?

 3              THE PROSPECTIVE JUROR:  Yes.

 4              THE COURT:  And what do you do for a living, sir?

 5              THE PROSPECTIVE JUROR:  I'm a sheet metal mechanic.

 6              THE COURT:  A mechanic.  And how long have you been

 7   doing that?

 8              THE PROSPECTIVE JUROR:  Eight years.

 9              THE COURT:  Eight years.  And what does your wife do

10   for a living?

11              THE PROSPECTIVE JUROR:  Home health aide.

12              THE COURT:  What?

13              THE PROSPECTIVE JUROR:  Home health aide.

14              THE COURT:  And do you have children?

15              THE PROSPECTIVE JUROR:  Three.

16              THE COURT:  And are they in school?

17              THE PROSPECTIVE JUROR:  Two are in school.

18              THE COURT:  And the third one?

19              THE PROSPECTIVE JUROR:  Is a baby.

20              THE COURT:  Is a baby.  And what is your educational

21   background?

22              THE PROSPECTIVE JUROR:  High school certificate.

23              THE COURT:  High school certificate?

24              THE PROSPECTIVE JUROR:  Right.

25              THE COURT:  And are you a native of the New York
```

PROSPECTIVE JUROR 47                          530

1    area?

2              THE PROSPECTIVE JUROR:  No, from Jamaica.

3              THE COURT:  You're from Jamaica.  How long have you

4    lived here, sir?

5              THE PROSPECTIVE JUROR:  Fourteen, 15 years.

6              THE COURT:  And you're a citizen?

7              THE PROSPECTIVE JUROR:  Yes, I'm a citizen.

8              THE COURT:  And have you ever been on a jury before?

9              THE PROSPECTIVE JUROR:  Never.

10             THE COURT:  And some of the language in the case

11   you're going to hear on tapes; and the tapes, some of the

12   language is pretty rough.  Would that affect your service?

13             THE PROSPECTIVE JUROR:  I think so.

14             THE COURT:  Why?

15             THE PROSPECTIVE JUROR:  Listening, sometimes I

16   really don't pick up stuff that fast.

17             THE COURT:  So you think bad language would affect

18   you?

19             THE PROSPECTIVE JUROR:  Yeah.

20             THE COURT:  All right.  I'll excuse you.  Thank you.

21             (Juror leaves.)

22             THE CLERK:  The next juror is number 64, 64.

23             (Juror present.)

24             THE COURT:  Good morning.  Would you talk nice and

25   loud so everybody over there against the wall can hear you.

PROSPECTIVE JUROR 64                                      531

1              THE PROSPECTIVE JUROR:  Sure.

2              THE COURT:  Okay.  And I don't have to know your

3    address, but I would like to know the area you live in.  Where

4    do you live?

5              THE PROSPECTIVE JUROR:  Suffolk County.

6              THE COURT:  Suffolk County.  Which town?

7              THE PROSPECTIVE JUROR:  Smithtown.

8              THE COURT:  Smithtown.  And do you have your own

9    home out there?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  And are you married?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  What do you do for a living?

14             THE PROSPECTIVE JUROR:  Advertising sales.

15             THE COURT:  Advertising sales.  And what does your

16   husband do for a living?

17             THE PROSPECTIVE JUROR:  He's in finance.

18             THE COURT:  He's in finance.  Work for a bank?

19             THE PROSPECTIVE JUROR:  No, cable company.  A cable

20   company.

21             THE COURT:  A cable company, okay.  And do you have

22   children?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  And are they in school?

25             THE PROSPECTIVE JUROR:  Yes.

PROSPECTIVE JUROR 64                    532

1          THE COURT:  How many children?

2          THE PROSPECTIVE JUROR:  Three.

3          THE COURT:  And are they in high school, grammar

4    school, both?

5          THE PROSPECTIVE JUROR:  Both.

6          THE COURT:  Okay.  And what is your educational

7    background?

8          THE PROSPECTIVE JUROR:  Bachelor's degree.

9          THE COURT:  From where?

10         THE PROSPECTIVE JUROR:  SUNY Oswego.

11         THE COURT:  SUNY Oswego, okay.  And have you ever

12   been on a jury before?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  Now, in this case, you're going to hear

15   some tapes; and some of the language on the tapes is going to

16   be a little rough, if you understand what I mean.  Nobody's

17   charged with using bad language; that's not what the charge

18   is.  Would that affect your service?

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  Okay.  Have you heard anything about the

21   case before Monday?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Do you use the Internet?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  If you're chosen as a juror, do we have

PROSPECTIVE JUROR 64                              533

1   your promise that you won't use the Internet to research the

2   case?

3                THE PROSPECTIVE JUROR:  Yes.

4                THE COURT:  Okay.  And also, have you read anything

5   about the case?

6                THE PROSPECTIVE JUROR:  Yes.

7                THE COURT:  In the paper?

8                THE PROSPECTIVE JUROR:  Yes.

9                THE COURT:  Can you put that out of your mind?

10               THE PROSPECTIVE JUROR:  I can try, yes.

11               THE COURT:  What?

12               THE PROSPECTIVE JUROR:  I can try, yes.

13               THE COURT:  Okay.  The point being that -- when did

14   you see something in the paper?

15               THE PROSPECTIVE JUROR:  Yesterday.

16               THE COURT:  Yesterday.  Which paper?

17               THE PROSPECTIVE JUROR:  Newsday.

18               THE COURT:  Newsday.  All right.  The point being

19   that what is in the paper isn't evidence.  Do you understand

20   that?

21               THE PROSPECTIVE JUROR:  Yes.

22               THE COURT:  And the charge in the case, you know

23   what the charge is from what I told you Monday; right?

24               THE PROSPECTIVE JUROR:  Yes.

25               THE COURT:  And that's basically what was in the

PROSPECTIVE JUROR 64                        534

1    paper.  It told you what the charge was; right?

2              THE PROSPECTIVE JUROR:  Uh-huh.

3              THE COURT:  Not much more than that?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Okay.  And have you ever been on a jury?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  Do you have any close friends or

8    relatives in the Suffolk Police Department, the Nassau Police

9    Department, or the FBI?

10             THE PROSPECTIVE JUROR:  Nassau Police Department.

11             THE COURT:  You do, Nassau?

12             THE PROSPECTIVE JUROR:  (Nods head affirmatively.)

13             THE COURT:  Where do they work, which town?

14             THE PROSPECTIVE JUROR:  I think in --

15             THE COURT:  Or are they county police?

16             THE PROSPECTIVE JUROR:  I think it's the Second

17   Precinct.  I'm not 100 percent sure if that's the precinct

18   number.

19             THE COURT:  Massapequa?

20             THE PROSPECTIVE JUROR:  It could be Levittown maybe.

21   I'm not sure.  Maybe Levittown.  I'm not sure exactly of the

22   town.

23             THE COURT:  You're not sure?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  In any event, this is not -- the police

PROSPECTIVE JUROR 64                          535

1   work is not something you discuss with the person, is it?

2           THE PROSPECTIVE JUROR:  No.

3           THE COURT:  Okay.  And police officers and law

4   enforcement officials generally, and FBI agents, they have to

5   be scrutinized the same as any other witness.  In other words,

6   just because somebody's in law enforcement doesn't make them a

7   truth-teller and it doesn't make them a liar.  Everybody's an

8   individual.  Is that a fair statement?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  And will you gauge everybody and judge

11  everybody individually?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Okay.  You use the Internet; right?

14          THE PROSPECTIVE JUROR:  Correct.

15          THE COURT:  Do we have your promise you won't look

16  the case up on the Internet?

17          THE PROSPECTIVE JUROR:  Uh-huh.

18          THE COURT:  Okay.  And did you ever have any

19  problems with the federal government of any kind?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  And have you ever been the victim of a

22  crime?

23          THE PROSPECTIVE JUROR:  No.  Fraud.  I mean,

24  identity fraud.

25          THE COURT:  Fraud?

PROSPECTIVE JUROR 64                         536

1          THE PROSPECTIVE JUROR:  Identity theft.

2          THE COURT:  Oh, okay.  In other words, somebody read

3   your credit card?

4          THE PROSPECTIVE JUROR:  Correct.

5          THE COURT:  And then you had to change all your

6   credit cards, change your bank accounts.  Did they get your

7   automobile license, too?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  How long ago was that?

10          THE PROSPECTIVE JUROR:  About two months ago.

11          THE COURT:  Two months ago.  And there's no charge

12   of identity theft here, but would that affect you in any way

13   in serving in a case like this?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  Okay.  Can you be fair and impartial?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Okay.  Any challenge for cause?

18          MR. MARSHALL:  No, Your Honor.

19          MR. GOLTZER:  No, sir.

20          THE COURT:  All right.  You are qualified then,

21   ma'am, and we'd ask you to come back tomorrow morning, if you

22   would, please, at 9:30, to the central jury room on the second

23   floor.  Thank you very much.

24          THE PROSPECTIVE JUROR:  Thank you.

25          (Juror leaves.)

PROSPECTIVE JUROR 11                        537

1            THE COURT:  Two more?

2            MR. MARSHALL:  Yes, two more, Judge.

3            THE COURT:  If we get 48, that's going to be enough.

4    Go ahead.

5            THE CLERK:  The next juror is number 11, 11.

6            (Juror present.)

7            THE COURT:  Good morning.

8            THE PROSPECTIVE JUROR:  Good morning.

9            THE COURT:  Have a seat.  Make yourself comfortable.

10   Would you talk in a nice loud voice so that everybody over

11   there against the wall can hear you, and if you'd speak into

12   the microphone, please.

13           Nobody needs to know your address, but could we

14   learn the area you live in?

15           THE PROSPECTIVE JUROR:  Queens.

16           THE COURT:  Queens.  What part of Queens?

17           THE PROSPECTIVE JUROR:  Forest Hills.

18           THE COURT:  Forest Hills.  And do you have your own

19   home out there or do you have a co-op or do you rent an

20   apartment?

21           THE PROSPECTIVE JUROR:  I have a home.  Home.

22           THE COURT:  You own a home.  And do you work outside

23   the home?

24           THE PROSPECTIVE JUROR:  Yes.

25           THE COURT:  What do you do?

PROSPECTIVE JUROR 11                                538

1              THE PROSPECTIVE JUROR:  I am a Rebbetzin, and I also

2    do --

3              THE COURT:  You are a?

4              THE PROSPECTIVE JUROR:  Rebbetzin.  I'm married to a

5    rabbi, and we -- I run all kinds of programs in shul.

6              THE COURT:  Is the temple that he works from, is

7    that in Forest Hills?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  And you work at the temple?

10             THE PROSPECTIVE JUROR:  Right.

11             THE COURT:  Okay.  Do you have any children?

12             THE PROSPECTIVE JUROR:  I have two children.

13             THE COURT:  And are they in school or post school?

14             THE PROSPECTIVE JUROR:  One is in school, one is

15   post.

16             THE COURT:  The adult, is that a boy or a girl?

17             THE PROSPECTIVE JUROR:  Girl.

18             THE COURT:  And what does she do for a living?

19             THE PROSPECTIVE JUROR:  She's a housewife.

20             THE COURT:  A housewife, okay.  And your educational

21   background, ma'am?

22             THE PROSPECTIVE JUROR:  I have a BA.

23             THE COURT:  In what?

24             THE PROSPECTIVE JUROR:  Sociology.  Sociology.

25             THE COURT:  And have you ever been on a jury before?

PROSPECTIVE JUROR 11                    539

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Now, being a religious person, you

3    probably aren't in favor of bad language, let me put it that

4    way.

5          THE PROSPECTIVE JUROR:  Correct.  In favor?  No, not

6    in favor.  Right.

7          THE COURT:  You're not in favor?

8          THE PROSPECTIVE JUROR:  Right.

9          THE COURT:  Okay.  Well, in this case, there are

10   going to be tape-recordings that are going to be played; and

11   some of the language on the tape-recordings is pretty rough,

12   frankly.  Now, do we have your assurance that that's not going

13   to affect your service as a juror?

14         THE PROSPECTIVE JUROR:  I can't promise that.

15         THE COURT:  You can't?  All right, I'll excuse you.

16   Thank you.

17         THE PROSPECTIVE JUROR:  Thank you.

18         THE CLERK:  Just report to the central jury room on

19   the second floor.

20         (Juror leaves.)

21         THE CLERK:  The next juror is number 19, 19.

22         (Juror present.)

23         THE COURT:  Hello, ma'am, how are you?

24         THE PROSPECTIVE JUROR:  Good morning.

25         THE COURT:  So you're the last of the 80 that we

1    chose.

2                    THE PROSPECTIVE JUROR:  Yes.

3                    THE COURT:  All right.  So now, will you speak nice

4    and loud so that the people here against the wall can hear

5    you.

6                    THE PROSPECTIVE JUROR:  Sure.

7                    THE COURT:  Okay.  That's good.

8                    THE PROSPECTIVE JUROR:  Is that good?

9                    THE COURT:  That's perfect.

10                   THE PROSPECTIVE JUROR:  Good morning.

11                   THE COURT:  I don't need to know your address, but

12   could you tell us what area you live in?

13                   THE PROSPECTIVE JUROR:  I live in Farmingville in

14   Suffolk County.

15                   THE COURT:  Okay.  And do you have your own home out

16   there?

17                   THE PROSPECTIVE JUROR:  Yes, I do.

18                   THE COURT:  And do you work outside the home?

19                   THE PROSPECTIVE JUROR:  Yes, I do.

20                   THE COURT:  What do you do?

21                   THE PROSPECTIVE JUROR:  I'm a licensed practical

22   nurse.

23                   THE COURT:  Okay.  And what does your husband do for

24   a living?

25                   THE PROSPECTIVE JUROR:  He is a senior environmental

PROSPECTIVE JUROR 19                          541

1    technician.

2              THE COURT:  And where does he work?

3              THE PROSPECTIVE JUROR:  He works for a private

4    company called Roux Associates.

5              THE COURT:  And is that on Long Island?

6              THE PROSPECTIVE JUROR:  Yes.  It's Long Island,

7    California, a couple of sites.

8              THE COURT:  And do you have children?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  How old are they?

11             THE PROSPECTIVE JUROR:  Twenty-five, 24, 22 and 17.

12             THE COURT:  What do they do for a living?

13             THE PROSPECTIVE JUROR:  The 25-year-old is a

14   CrossFit trainer and seasonal lifeguard, ocean lifeguard.  My

15   24-year-old is a transporter at the hospital.  He's currently

16   back in school for nursing.  My 22-year-old is dabbling in

17   getting into the stock market.  And my 17-year-old is a senior

18   in high school and he works at Buffalo Wild Wings.

19             THE COURT:  And have you ever been on a jury?

20             THE PROSPECTIVE JUROR:  No, sir.

21             THE COURT:  And did you ever hear about this case

22   before Monday?

23             THE PROSPECTIVE JUROR:  No.

24             THE COURT:  Have you ever read anything about the

25   case?

PROSPECTIVE JUROR 19                          542

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Have you been on a jury, ever?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  And some of the language -- well, you're

5   going to hear some tapes in this case if you're chosen as a

6   juror, and some of the language on the tapes is pretty raw.

7   Would that affect your service?

8          THE PROSPECTIVE JUROR:  No.  I work in a hospital.

9          THE COURT:  Okay.

10          THE PROSPECTIVE JUROR:  I hear a lot.

11          THE COURT:  Do you have any close friends or

12   relatives in the Suffolk/Nassau Police Departments?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  How about in the FBI?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  And have you ever been the victim of a

17   crime?

18          THE PROSPECTIVE JUROR:  No, not that I can think of.

19          THE COURT:  I'm not saying you should have been.

20          THE PROSPECTIVE JUROR:  No.  I'm trying to think.

21   No.

22          THE COURT:  Okay.  And have you ever had any

23   problems with the federal government?

24          THE PROSPECTIVE JUROR:  As far as like taxes or

25   anything?

PROSPECTIVE JUROR 19                                        543

1              THE COURT:  Yes.  Well, that's --

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Or of any other kind.

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  How do you get your news?

6              THE PROSPECTIVE JUROR:  I usually watch either

7    channel 7 or sometimes News 12 or like Newsday.  But I don't

8    get to see a lot.

9              THE COURT:  And what newspapers do you read?

10             THE PROSPECTIVE JUROR:  I just follow sometimes

11   Newsday online.  Like I don't get the paper itself.  I get it

12   on my phone.

13             THE COURT:  So you do it online?

14             THE PROSPECTIVE JUROR:  Right.

15             THE COURT:  Now, since you do use the Internet, do

16   we have your assurance that you won't research the case on the

17   Internet?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  Okay.  Because that would be improper to

20   do that.

21             THE PROSPECTIVE JUROR:  Right.

22             THE COURT:  And we have your solemn promise about

23   that?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  And do you think you can be fair and

PROSPECTIVE JUROR 19                          544

1    impartial?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  All right.  Any challenge for cause?

4              MR. MARSHALL:  No, Your Honor.

5              MR. GOLTZER:  No, sir.

6              THE COURT:  All right.  So you are qualified, and

7    what that means is that we will see you tomorrow morning.  You

8    get to the central jury room tomorrow morning at 9:30.

9              THE PROSPECTIVE JUROR:  9:30?  Sure.

10             THE COURT:  And then we'll bring you up here and

11   we'll see what happens.

12             THE PROSPECTIVE JUROR:  I'll do it again.  Okay.

13             THE COURT:  Thank you very much.

14             THE PROSPECTIVE JUROR:  Thank you.

15             MR. GOLTZER:  I'm so sorry.  Would you ask the

16   educational background?  I don't think we got that.  Where she

17   went to school.

18             THE COURT:  Sure.  Where did you go?

19             THE PROSPECTIVE JUROR:  I have an associate's degree

20   from Nassau Community College.  That was for paralegal, which

21   I never practiced.

22             THE COURT:  I didn't ask that.  Thank you.

23             THE PROSPECTIVE JUROR:  And I went through BOCES

24   Technical School for my LPN license.  And I have some credits

25   through Excelsior College for my RN, and I'm trying to pursue.

PROCEEDINGS                              545

1          THE COURT:  Good.  Thank you very much.  Still no

2    challenge for cause, I take it?

3          MR. GOLTZER:  Correct.

4          MR. MARSHALL:  No.

5          THE COURT:  You are excused.  Thank you very much.

6          (Juror leaves.)

7          THE COURT:  Do you people want to take a recess?

8          MR. GOLTZER:  It would be a good time.

9          THE COURT:  Take five for a minute.

10         (Recess.)

11         (Prospective jurors enter.)

12         THE COURT:  Good morning, everybody.  We have 15?

13         THE CLERK:  Yes, Judge.

14         THE COURT:  Why don't you come on up into the jury

15   box.  Come on up.  Have a seat in the jury box, everybody.  No

16   particular seat, any seat you want is fine.  Counsel and the

17   defendant may be seated.  Okay.

18         Good day, everybody.  My name is John Keenan and I'm

19   a federal judge, and we're in the process of selecting a jury

20   in a criminal case.  The defendant is the man seated over

21   there.  Would you stand up, Mr. Romano.  And his name is

22   Joseph Romano.  And the name of the case is the United States

23   of America against Joseph Romano.  And the defendant is

24   represented by Mr. George Goltzer --

25         MR. GOLTZER:  Good morning.

PROCEEDINGS                                         546

1          THE COURT:  -- and by Mr. Michael Bachrach, Mr.

2     Bachrach being the shorter of the two gentlemen and Mr.

3     Goltzer being the taller of the two gentlemen.  And the

4     government is represented by Marshall Miller, who is an

5     Assistant United States Attorney; Una Dean, who is an

6     Assistant United States Attorney.

7          And also at the government's table, the young lady

8     closest to me, her name is Ja'Shayla Smith, and she's a

9     paralegal for the U.S. Attorney.  And also we have an FBI

10    agent at the table, Mr. Tariche, Reynaldo Tariche,

11    T-a-r-i-c-h-e.  Those are the people who are at the table, so

12    that you understand who they are.

13          Okay.  The jury in this case, in order to ensure

14    your privacy, is going to be anonymous.  That's why you have

15    numbers on you, those little tags that you've got that are

16    taped to your chest.  All right.

17          And it's not unusual in a federal case that juries

18    be anonymous or the jurors be anonymous, because in this

19    particular case, the charges are that the defendant conspired,

20    in other words, that he agreed with at least one other person,

21    and the agreement allegedly was to murder a Federal Judge and

22    also to murder an Assistant United States Attorney.

23          And, as a result of the charges, the likelihood is

24    that there will be a lot of publicity in this case, and we

25    don't want people bothering jurors, and if your names became

PROCEEDINGS                                    547

1   public, they might pester you.  And it's for that reason that

2   you're going to be anonymous.

3            Your anonymity is going to be to the degree that you

4   want from each other.  You can tell each other your first

5   names.  I'm not going to know your names.  The lawyers aren't.

6   The defendant isn't.  And the clerk may, Mr. Ryan may have to

7   learn it, but other than that, you're going to be anonymous.

8   But that really is irrelevant to the issues in the case, and

9   the only reason we're doing it is to make sure that you don't

10  get pestered, which sometimes happens with the media.

11           All right.  I'm going to name some names here or

12  read off some names.  If you know any of the names or if you

13  know any of the people at the tables, just let us know.  If

14  any of these names that I read off, you know them, just raise

15  your hand.

16           Joseph Romano, I pointed out to you.  His relatives,

17  Michael Romano, Salvatore Romano, Vincent Romano, Karen

18  Romano.  Then there's a man whose name is Dejvid, D-e-j-v-i-d.

19  I'll call him David, but it's Dejvid Mirkovic.

20           Megan Mirkovic, Michael Mirkovic, Steven Candemeres,

21  Tom Cleere, Kevin Wells, Bruce Wilson, Thomas Arnold, Anthony

22  Lanza, Russell or Rusty Barnes, Michael Dibari, Anthony

23  Jazmin -- excuse me, I guess it's Jazmin Anthony.  I was

24  thinking Anthony would be the first name.  I think it's Jazmin

25  Anthony.  Melissa Hasan, Nicole Olson, Anthony Filipponi.

PROCEEDINGS                               548

1            And the judge's name is Joseph Bianco.  And the

2    prosecutor's name who is named in the indictment is Lara

3    Treinis-Gatz, G-a-t-z.

4            Nicholas Pittas, Christopher Pittas, Gregory Giblin,

5    G-i-b-l-i-n, Charles Carnesi, Vincent Ansanelli, Mark Goidell,

6    Robert Seimer, Robert Strecker, John Wighaus.  I introduced

7    Mr. Tariche.

8            James Lopez, James "Randy" Cox, and William Hessle,

9    Sean McMullen, Patrick Quinn, Gerald -- I hope I'm pronouncing

10   this name correctly.  Gerald Machacek, M-a-c-h-a-c-e-k,

11   Machacek.  Eric Tassiello, Ramel Thompson, Jose Torres, Juan

12   Vialovos-Coreas, Jose Estrella, Anthony Basile, Bobby Brown.

13           John Cabrejal, Jason Hawxhurst, Rasoul Johnson,

14   James Moran, Vincent Traficante, Luis Navarro, Karon Powell,

15   Marc Darshin, Charles Grandberry, Juan Orengo, Barry Costa,

16   and Joseph Coppola.

17           Now, those are names that you'll hear probably

18   during the trial.  Some of them may be witnesses.  I'm just

19   telling you that ahead of time.

20           Now, there are certain rules of law that apply in

21   nearly every criminal case -- well, actually, in every

22   criminal case that's tried in the United States, whether it's

23   in Federal Court or in State Court.  And I'm going to go over

24   six rules of law with you right at the outset so that you

25   understand.

PROCEEDINGS                                    549

1          First of all, the indictment, which contains the

2     charges in the case.  I'm holding up a copy of the indictment.

3     The indictment is the means or the vehicle whereby the

4     defendant is brought into court in a criminal case.

5          If it was a civil case, and civil cases are tried

6     here in this very courtroom from time to time.  If it was a

7     civil case, where one person was suing another person or one

8     company was suing another company or a person was suing a

9     company for money damages, that's called a civil case.  And

10    the way you start a civil case is with a summons and a

11    complaint.  In a criminal case, you start the case with an

12    indictment.

13         The summons and complaint in a civil case is proof

14    of nothing; and the indictment in a criminal case is, this

15    case, is proof of absolutely nothing.  All the indictment is

16    is the vehicle or means to bring the defendant here.  It's

17    proof of absolutely nothing and it is not evidence in the

18    case.

19         The defendant has pleaded not guilty to the

20    indictment, and the second rule of law is he is presumed to be

21    innocent.  That means that the burden to prove him guilty

22    rests with the government, and the burden on the government is

23    to prove him guilty beyond a reasonable doubt.  That's what

24    the burden on the government is.

25         And the defendant, Mr. Romano, and his lawyers, Mr.

PROCEEDINGS                                    550

1    Goltzer and Mr. Bachrach, need not do anything.  All they have

2    to do is be here with him, and he has to be here.  He need not

3    testify.  He doesn't have to produce any evidence or call any

4    witnesses.  And if the lawyers choose not to ask questions,

5    you can't hold that against Mr. Romano.  The point being, the

6    burden is always on the government and it never shifts.

7    That's what I want to make sure you understand.

8            And if he chose not to testify -- and he may well

9    choose not to testify -- that is a decision that Mr. Romano

10   and his lawyers make, and you can't hold that against him in

11   any manner, shape or form.

12           So those are four rules of law right at the

13   beginning:  The indictment is proof of nothing; the defendant

14   is presumed to be innocent; the government must prove him

15   guilty beyond a reasonable doubt and he and his lawyers need

16   do nothing; and he doesn't have to testify.

17           And in criminal cases in Federal Court, the way we

18   operate is the law is for the Court.  I give you the law, and

19   you have to follow the law as I give it to you.  You decide

20   the facts of the case.  You are supreme on questions of fact,

21   and I supply the law to you.

22           I have a terrible cold and I'm going to be coughing

23   all day here, so I apologize to you for that.

24           The sixth rule of law that applies in this case and

25   in every case of this type is that punishment is not a concern

PROCEEDINGS                                    551

1    of the jury's.  In other words, the sentence that might flow

2    from your verdict if your verdict is guilty is not something

3    for you to be concerned with.  That's my responsibility.

4    Punishment is not a concern of the jury's.

5            Now, let me tell you a little bit more, and then

6    we'll ask some questions of you individually later on.  Let me

7    ask generally a couple of questions, and then I'll let you go

8    into the jury room and we'll call you out individually.

9            If any of you are lawyers, would you raise your

10   hand.  Okay.  Are any of you in law enforcement, or were you

11   ever in law enforcement?  In other words, were you FBI agents,

12   police officers, assistant district attorneys, anything like

13   that?  Okay.  All right.  Then I think what we can do is ask

14   the jury to leave.

15           THE CLERK:  I have to swear them in first.

16           THE COURT:  Swear them in.

17           (Jury sworn by the clerk.)

18           THE COURT:  What we're going to do now is we're

19   going to call you each back individually for a while, and the

20   rest of you can wait in the jury room and when you come out

21   just take a seat in the witness box.

22           Oh, I didn't mention -- I'm sorry, I should have

23   mentioned this.  Wait one second, I apologize.

24           There are certain companies and institutions that

25   are going to be referred to in the testimony.  I should have

PROSPECTIVE JUROR 82                           552

1   mentioned these when I read off the names of the people.

2           The American Coin Company, the All American Coin

3   Company, the Last Quarter Coin Company, Universal Coin

4   Collections Incorporated, Collectible Coins Incorporated, the

5   Millennium Custom Auto, Olympic Enterprises LLC, the Nassau

6   County Correctional Center, the Queens Private Detention

7   Facility, and the Metropolitan Detention Center.

8           Those are places and institutions that might be

9   referred to in the testimony.  If you're familiar with any of

10  those, let me know.  Okay, thank you.

11          (Jurors leave.)

12          THE CLERK:  The next number is 82, 82.

13          (Juror present.)

14          THE COURT:  Good day, sir, how are you?

15          THE PROSPECTIVE JUROR:  Good, thank you.

16          THE COURT:  Good.  You have a nice loud voice, good.

17  Will you speak loud enough so that everybody over there

18  against the wall can hear you?

19          THE PROSPECTIVE JUROR:  Sure.

20          THE COURT:  Thanks.  I don't need to know your exact

21  address, that's none of my business, but I would like to know

22  what area you live in.

23          THE PROSPECTIVE JUROR:  Long Island.  Huntington.

24          THE COURT:  Huntington?  Okay, swell.  Do you own

25  your own home out there?

PROSPECTIVE JUROR 82                        553

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  And what do you do for a living?

3            THE PROSPECTIVE JUROR:  I'm a teacher.

4            THE COURT:  What subject?

5            THE PROSPECTIVE JUROR:  High school science teacher.

6            THE COURT:  High school science.  And your

7    educational background, sir?

8            THE PROSPECTIVE JUROR:  Master's degree in

9    education.

10           THE COURT:  And where did you get your master's?

11           THE PROSPECTIVE JUROR:  University of Houston.

12           THE COURT:  Do they still have the hotel still down

13   there?

14           THE PROSPECTIVE JUROR:  Yes.  As far as I know, they

15   do, yes.

16           THE COURT:  They do?  I stayed there a couple times.

17   That's a fancy, nice place.  And where did you go

18   undergraduate?

19           THE PROSPECTIVE JUROR:  West Chester State College

20   in Pennsylvania.

21           THE COURT:  In Pennsylvania?

22           THE PROSPECTIVE JUROR:  Uh-huh.

23           THE COURT:  And are you a native of Pennsylvania,

24   Texas, New York or some other place?

25           THE PROSPECTIVE JUROR:  Pennsylvania, I grew up.

PROSPECTIVE JUROR 82                                554

1          THE COURT:  Whereabouts?

2          THE PROSPECTIVE JUROR:  Reading, Pennsylvania.

3          THE COURT:  Reading, okay.  And are you married?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And does your wife work outside the

6   home?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  What does she do?

9          THE PROSPECTIVE JUROR:  She's a substitute teacher.

10         THE COURT:  She's a substitute teacher.  And do you

11  have children?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  And how old are they?  I mean, when I

14  say how old are they, are any of them grown?

15         THE PROSPECTIVE JUROR:  Twenty-three and 18.

16         THE COURT:  Is the 23-year-old a boy or a girl?

17         THE PROSPECTIVE JUROR:  A girl.

18         THE COURT:  And what does she do?

19         THE PROSPECTIVE JUROR:  She's a teacher.

20         THE COURT:  Pedagogy background.  And the

21  18-year-old?

22         THE PROSPECTIVE JUROR:  He's in college, University

23  of Delaware.

24         THE COURT:  University of Delaware, okay.  And how

25  long have you had the house out in Huntington, about?

PROSPECTIVE JUROR 82                                    555

1              THE PROSPECTIVE JUROR:  Sixteen years.

2              THE COURT:  Have you ever been on a jury before?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Now, did you ever hear about this case

5     before I talked to you a little while ago?

6              THE PROSPECTIVE JUROR:  Not to my memory.

7              THE COURT:  Now, it is likely that there will be

8     newspaper stories about the case.  I understand that there

9     already have been some newspaper stories.  It's possible

10    there's something you'll hear on television about the case.

11    That I don't know for sure, but it's possible.  And there will

12    certainly be something on the Internet about the case.

13             Now, I assume you use the Internet.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Okay.  The first thing that we need from

16    you, please, is an assurance that you won't study the case or

17    research the case or Google me and find out what other cases I

18    might have had or Google the lawyers or try and find old

19    newspaper stories about the case.  Do we have your promise

20    that you won't do that?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Okay, thank you.  Because that's very

23    important.  The point is that in a trial, you learn about the

24    case, you're a juror, and the best way of learning about it is

25    in the courtroom, from the witnesses and from whatever

PROSPECTIVE JUROR 82                                        556

1   physical evidence is produced and supplied to you.  That's the

2   way to learn about the case.

3           Have you ever been on -- you've never been on a

4   jury, you told me.  Have you ever been the victim of a crime?

5           THE PROSPECTIVE JUROR:  I had a car broken into one

6   time.

7           THE COURT:  How long ago, about?

8           THE PROSPECTIVE JUROR:  Four or five years ago.

9           THE COURT:  Was that reported to the police?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Did they catch anybody?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  Okay.  That didn't make you overjoyed

14  with the police; right?

15          THE PROSPECTIVE JUROR:  You know, there was, you

16  know, really nothing much they could do about it.  It was in a

17  parking lot and they were come and gone before we could do

18  anything about it.

19          THE COURT:  Do you have any close friends or

20  relatives who are police officers?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Do you have any close friends or

23  relatives who are in the Federal Bureau of Investigation?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  Now, police testimony and law

PROSPECTIVE JUROR 82                    557

1  enforcement testimony, that means FBI testimony, has to be

2  gauged, evaluated, analyzed the same as the testimony of

3  anybody else.  In other words, if a high school science

4  teacher came in and you were on the jury, the high school

5  science teacher isn't entitled to greater belief because he or

6  she is a high school science teacher.  You judge each high

7  school science teacher individually.

8          The same thing with law enforcement.  That's the

9  reason I'm asking this, to make sure that -- some people say,

10  oh, he's an FBI agent, he's got to be telling the truth, where

11  other people might say, oh, he's an FBI agent, I wouldn't

12  believe him on a stack of bibles.

13          The point being, you can't start that way.  You got

14  to start that everybody is equal and you listen, and if the

15  story makes sense and if it's believable, you believe it.  If

16  it's not believable and if there are a lot of inconsistencies

17  in the story or the testimony, then you might not believe it.

18          So the point, again, being that law enforcement

19  testimony is subject to the same analysis as the testimony of

20  any lay witness.

21          Do you have any problem with that?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  Okay.  Have you ever had any problems of

24  any kind with the federal government?

25          THE PROSPECTIVE JUROR:  No.

PROSPECTIVE JUROR 82                                      558

1              THE COURT:  And there are going to be

2    tape-recordings played in the case, and some of the

3    tape-recordings have some rough language.  Nobody's charged

4    with using rough language.  The charges are completely

5    different than that.  Would the rough language particularly

6    upset you?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  And it wouldn't --

9              THE PROSPECTIVE JUROR:  I'm a high school teacher, I

10   hear that all the time.

11             THE COURT:  You're a high school teacher, so you

12   hear a lot of it, or some of it.

13             All right.  And can you be fair and impartial?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Any challenge for cause?

16             MR. MARSHALL:  No, Your Honor.

17             MR. GOLTZER:  No, sir.

18             THE COURT:  Thank you.  All right, you are qualified

19   to be a juror, sir.  If you'd come back tomorrow morning.

20   You're excused now for the rest of the day.  Come back

21   tomorrow morning at 9:30.  Report to the central jury room on

22   the second floor.  Thank you very much.

23             THE PROSPECTIVE JUROR:  Okay, thank you.

24             (Juror leaves.)

25             THE CLERK:  The next juror is number 84, 84.

PROSPECTIVE JUROR 84                              559

1              (Juror present.)

2              THE COURT:  Good day, ma'am, how are you?

3              THE PROSPECTIVE JUROR:  Good.  How are you?

4              THE COURT:  Good.  Would you speak nice and loud so

5    that everybody over there against the wall can hear you.  I

6    don't have to know your address, but could you tell me what

7    area you live in?

8              THE PROSPECTIVE JUROR:  Nassau County.  Nassau

9    County.

10             THE COURT:  Nassau County.  And which town?

11             THE PROSPECTIVE JUROR:  Valley Stream.

12             THE COURT:  Valley Stream.  And do you live alone?

13   Do you live with your folks?

14             THE PROSPECTIVE JUROR:  I live with my family.

15             THE COURT:  Your family.  And what do you do for a

16   living?

17             THE PROSPECTIVE JUROR:  I'm a biller.  I'm a biller

18   for a courier company.

19             THE COURT:  You're a biller for what kind of

20   company?

21             THE PROSPECTIVE JUROR:  A courier company.

22             THE COURT:  A courier company.  And how long have

23   you been doing that?

24             THE PROSPECTIVE JUROR:  Over a year.

25             THE COURT:  And what's your educational background?

PROSPECTIVE JUROR 84                              560

1          THE PROSPECTIVE JUROR:  Accounting and taxation.

2          THE COURT:  And you got a degree where?

3          THE PROSPECTIVE JUROR:  St. John's.

4          THE COURT:  And a BBA?

5          THE PROSPECTIVE JUROR:  I have my master's in tax.

6          THE COURT:  Oh, good for you.

7          THE PROSPECTIVE JUROR:  Thank you.

8          THE COURT:  And that's from St. John's, too?

9          THE PROSPECTIVE JUROR:  Uh-huh.

10         THE COURT:  And what does your father do for a

11    living?

12         THE PROSPECTIVE JUROR:  He's a machinist.

13         THE COURT:  Does your mother work outside the home?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  What does she do?

16         THE PROSPECTIVE JUROR:  She's a physician biller for

17    a hospital.

18         THE COURT:  And do you have brothers and sisters?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  And what do they do?

21         THE PROSPECTIVE JUROR:  They're in school.

22         THE COURT:  They're all in school, okay.  And have

23    you ever been on a jury before?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  And I didn't ask you this, and I'm sure

PROSPECTIVE JUROR 84                    561

1    I'm assuming it, but I'll ask it.  So I better ask it.  You're

2    not married, are you?

3                THE PROSPECTIVE JUROR:  No.

4                THE COURT:  All right.  And you've never been on a

5    jury?

6                THE PROSPECTIVE JUROR:  No.

7                THE COURT:  Now, in this case, you're going to hear

8    tape-recordings played; and some of the tape-recordings have

9    some pretty tough language, rough language, bad language, in

10   other words.  But nobody is charged with using bad language;

11   that's not the charge in the case.

12               Would the fact that rough language is used, would

13   that affect your service?

14               THE PROSPECTIVE JUROR:  No.

15               THE COURT:  Okay.  Do you have any close friends or

16   relatives in the Federal Bureau of Investigation or in the

17   Nassau or Suffolk Police Department?

18               THE PROSPECTIVE JUROR:  No.

19               THE COURT:  And have you ever been the victim of a

20   crime yourself?

21               THE PROSPECTIVE JUROR:  No.

22               THE COURT:  And so far as you know, have your mother

23   or father ever been the victim of a crime?

24               THE PROSPECTIVE JUROR:  No.

25               THE COURT:  Have you ever had any problems at all

PROSPECTIVE JUROR 84                                    562

1    with the federal government?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Did you ever hear about this case before

4    I told you a little bit about it about 20 minutes ago?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  And there probably will be things in the

7    newspapers about the case, and if there's things in the

8    newspapers, that means there's going to be stuff on the

9    Internet.

10             Do I have your promise, first of all, that if you

11   see something in the paper that, as soon as you see it, you'll

12   put it aside and won't read it?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  And do I have your solemn promise and do

15   the parties have your promise and the lawyers that you won't

16   use the Internet to research the case, the point being that

17   what you learn about the case you're going to learn in the

18   courtroom if you're chosen, not over the Internet, not on

19   television, not in the paper, because you're going to be the

20   expert on the case, because you're going to be here in court

21   and hear all of it.

22             And the people who send messages around about the

23   case or write stories about the case, generally, they're not

24   here all the time, so, therefore, you know more about it

25   firsthand than they do.  Do you understand that?

PROSPECTIVE JUROR 84                    563

1          THE PROSPECTIVE JUROR:  Uh-huh.

2          THE COURT:  So you decide the case, based on what

3    you hear in court; right?

4          THE PROSPECTIVE JUROR:  Uh-huh.

5          THE COURT:  And can you be fair and impartial?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Okay.  Any challenge for cause?

8          MR. MARSHALL:  I think Your Honor didn't cover the

9    law enforcement testimony that Your Honor usually covers, and

10   I didn't know if you wanted to do that.

11         THE COURT:  All right.

12         The fact of the matter is that there will be FBI

13   testimony, and there may be testimony from police officers

14   from Suffolk or Nassau Counties.  Police testimony has to be

15   analyzed, evaluated, scrutinized the same as anybody else's

16   testimony.  That makes sense, doesn't it?

17         You don't say that because somebody has a master's

18   degree they're going to be telling the truth, but if they have

19   a Ph.D. they've got to be liars.  The point is, it's not your

20   title or your job that determines whether you're telling the

21   truth.  It's whether you are telling the truth.

22         Not to scandalize police, and all these people are

23   presumed to be innocent who I saw on television last night,

24   but the big story last night on the news was about a lot of

25   policemen that got locked up in New York for fraudulent

PROSPECTIVE JUROR 84                                      564

1   activity.  So, again, they're presumed innocent.  I don't know

2   whether they did anything.  But sometimes policemen do bad

3   things, too, even an FBI agent, right?

4             THE PROSPECTIVE JUROR:  Uh-huh.

5             THE COURT:  You don't have any quarrel with that?

6             THE PROSPECTIVE JUROR:  (Shakes head negatively.)

7             THE COURT:  And you can be fair?

8             THE PROSPECTIVE JUROR:  Uh-huh.

9             THE COURT:  Thank you.

10            MR. MARSHALL:  No objection, Your Honor.

11            MR. GOLTZER:  None.

12            THE COURT:  Thank you.  All right.  You are

13   qualified, so if you could please come back tomorrow morning

14   at 9:30, and just go to the central jury room on the second

15   floor at 9:30.  Thank you very much.  And you can go out

16   through the main door there.  Thanks again.

17            (Juror leaves.)

18            THE CLERK:  The next juror is number 93, 93.

19            (Juror present.)

20            THE COURT:  Good day.  Just have a seat, if you

21   would.  Make yourself comfortable.  Would you speak in a nice

22   loud voice, please, so that everybody in the courtroom here

23   can hear you, particularly those people over there against the

24   wall.

25            THE PROSPECTIVE JUROR:  Sure.

PROSPECTIVE JUROR 93                    565

1          THE COURT:  I don't want to know your exact address,
2    but what area do you live in?
3          THE PROSPECTIVE JUROR:  In terms of the borough or
4    the area?
5          THE COURT:  Well, do you live here in Brooklyn?
6          THE PROSPECTIVE JUROR:  Brooklyn.
7          THE COURT:  What part of Brooklyn?
8          THE PROSPECTIVE JUROR:  Canarsie.
9          THE COURT:  Canarsie.  Have you ever been on a jury
10   before?
11         THE PROSPECTIVE JUROR:  Selected, but did not serve.
12         THE COURT:  You were selected?
13         THE PROSPECTIVE JUROR:  Yes.  They made an
14   agreement.
15         THE COURT:  They reached an agreement?
16         THE PROSPECTIVE JUROR:  Yes.
17         THE COURT:  In other words, the case settled?
18         THE PROSPECTIVE JUROR:  Yes.
19         THE COURT:  Was that a civil case or a criminal
20   case?
21         THE PROSPECTIVE JUROR:  Civil.
22         THE COURT:  Civil case.  How long ago was that?
23         THE PROSPECTIVE JUROR:  About two, two years or so
24   ago.
25         THE COURT:  And are you married or single?

PROSPECTIVE JUROR 93                          566

1              THE PROSPECTIVE JUROR:  Single.

2              THE COURT:  And what do you do for a living?

3              THE PROSPECTIVE JUROR:  I work as a support staff

4    with New York City.

5              THE COURT:  You work with support staff?

6              THE PROSPECTIVE JUROR:  I work as a support staff.

7              THE COURT:  With New York City?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  And where physically do you work, in

10   Manhattan?

11             THE PROSPECTIVE JUROR:  Manhattan.

12             THE COURT:  What part of town, where?

13             THE PROSPECTIVE JUROR:  Bowling Green.

14             THE COURT:  Bowling Green.  And how long have you

15   worked there?

16             THE PROSPECTIVE JUROR:  Ten years.

17             THE COURT:  Ten years.  Okay.  And what's your

18   educational background?

19             THE PROSPECTIVE JUROR:  I did have a bachelor's in

20   liberal arts, with a concentration in social science.

21             THE COURT:  A bachelor's in liberal arts with a

22   concentration in social science.  And where did you get the

23   bachelor's degree, what college?

24             THE PROSPECTIVE JUROR:  I have to think.  College of

25   New Rochelle.

PROSPECTIVE JUROR 93                            567

1              THE COURT:  The College of New Rochelle?

2              THE PROSPECTIVE JUROR:  Yes.  They had a Manhattan

3      campus.

4              THE COURT:  Manhattan campus?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Do nuns teach there?

7              THE PROSPECTIVE JUROR:  Pardon?  No.

8              THE COURT:  And are you a native of the New York

9      area?

10              THE PROSPECTIVE JUROR:  No.

11              THE COURT:  Where are you from originally?

12              THE PROSPECTIVE JUROR:  Guyana.

13              THE COURT:  Guyana?

14              THE PROSPECTIVE JUROR:  Yes.

15              THE COURT:  And how long have you been here in the

16      New York area?

17              THE PROSPECTIVE JUROR:  About 20 years.

18              THE COURT:  Twenty years.  And are you married?

19              THE PROSPECTIVE JUROR:  No.

20              THE COURT:  And in this case, there are going to be

21      tape-recordings that are played, and some of the language on

22      the tape-recordings is a little foul.  Would that affect your

23      service here?

24              THE PROSPECTIVE JUROR:  Yes.  I don't use that kind

25      of language.

PROSPECTIVE JUROR 83                                568

1              THE COURT:  I'm sorry?

2              THE PROSPECTIVE JUROR:  I do not speak with that

3     kind of language.

4              THE COURT:  All right.  You think that would affect

5     you.  All right.  I'll excuse you.  Thank you very much.  Go

6     back down to central jury room.  Thank you very much.

7              (Juror leaves.)

8              THE CLERK:  The next juror is number 83, 83.

9              (Juror present.)

10             THE COURT:  You can put your coat down, try and make

11    yourself comfortable.

12             THE PROSPECTIVE JUROR:  You want me to sit?

13             THE COURT:  Yes, if you would.  Try and make

14    yourself comfortable.  Speak nice and loud so that everybody

15    over there can hear you, even people against the wall.

16             I don't have to know your exact address, but could

17    you tell me what area you live in?

18             THE PROSPECTIVE JUROR:  You want like -- I'm in

19    Suffolk, Long Island.

20             THE COURT:  Okay.  Suffolk, fine.  What town?

21             THE PROSPECTIVE JUROR:  Port Jeff Station.

22             THE COURT:  Port?

23             THE PROSPECTIVE JUROR:  Port Jefferson Station.

24             THE COURT:  Oh, Port Jefferson, I'm sorry.  The end

25    of the line.

PROSPECTIVE JUROR 83                                    569

1                    THE PROSPECTIVE JUROR:  Yes.

2                    THE COURT:  And do you have your own home out in

3        Port Jeff?

4                    THE PROSPECTIVE JUROR:  Yes.

5                    THE COURT:  And how long have you had the home?

6                    THE PROSPECTIVE JUROR:  Four years.

7                    THE COURT:  Four years.  And are you married or

8        single?

9                    THE PROSPECTIVE JUROR:  Single.

10                   THE COURT:  And what do you do for a living?

11                   THE PROSPECTIVE JUROR:  Travel agent.

12                   THE COURT:  Travel agent.  I don't know, are you

13       independently employed or do you work for a large agency?

14                   THE PROSPECTIVE JUROR:  Large agency.

15                   THE COURT:  Okay.  And is that on Long Island or --

16                   THE PROSPECTIVE JUROR:  Yes.

17                   THE COURT:  -- in the city?  On Long Island?

18                   THE PROSPECTIVE JUROR:  Yes, Smithtown.

19                   THE COURT:  And how long have you been working

20       there?

21                   THE PROSPECTIVE JUROR:  Eleven years.

22                   THE COURT:  What's your educational background?

23                   THE PROSPECTIVE JUROR:  One year of college, up to

24       one year of college.

25                   THE COURT:  Where did you go?

PROSPECTIVE JUROR 83                    570

1          THE PROSPECTIVE JUROR:  Queensborough Community.

2          THE COURT:  Are you a native of the New York area?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Did you ever hear of this case before I

5     told you a little bit about it?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  There probably will be things in the

8     papers about the case.  If there are things in the papers,

9     that means there will be things on the Internet, too.  When I

10    say things, I mean stories.  Also, there may be television or

11    radio reports about the case.  I don't know whether that will

12    happen, but it's possible.

13         Do I, and more important than me, does the

14    defendant, his lawyers and the government lawyers, do they

15    have your assurance that, A, you won't try and research the

16    case on the Internet; in other words, you get your information

17    on the case here in court.  Does that make sense?

18         THE PROSPECTIVE JUROR:  Right.

19         THE COURT:  And also, if you do read a paper and you

20    see something in the paper about the case, will you put it

21    aside and not read it?

22         THE PROSPECTIVE JUROR:  Uh-huh.

23         THE COURT:  Okay, thank you.  Try and answer

24    verbally.

25         THE PROSPECTIVE JUROR:  I'm sorry.  Yes.

PROSPECTIVE JUROR 83                    571

1            THE COURT:  She's got to get it down.  Okay, thank

2    you.  When I say "she," I mean our court reporter, Ms. Bryant.

3    If you would try and answer verbally.

4            All right.  Now, let me ask you this:  Have you ever

5    been on a jury before?

6            THE PROSPECTIVE JUROR:  No.

7            THE COURT:  Now, in this case, the likelihood is

8    we're going to hear some tape-recordings, and on some of the

9    tape-recordings the language is pretty rough.  Would that

10   affect your service?

11           THE PROSPECTIVE JUROR:  No.  I mean, but it wouldn't

12   be pleasant, you know, but...

13           THE COURT:  But the fact that somebody uses bad

14   language doesn't make them guilty of anything.

15           THE PROSPECTIVE JUROR:  No, no.

16           THE COURT:  Okay.  That's the point.  All right.  Do

17   you have any close friends or relatives in either the Suffolk

18   Police Department or a town, a village in Suffolk or in Nassau

19   County?

20           THE PROSPECTIVE JUROR:  No.

21           THE COURT:  Do you have any close friends or

22   relatives in the FBI?

23           THE PROSPECTIVE JUROR:  No.

24           THE COURT:  Now, law enforcement testimony, that is,

25   the testimony of police officers and FBI agents, has to be

PROSPECTIVE JUROR 83                                    572

1    analyzed and evaluated the same as anybody else's testimony.

2    Does that make sense to you?

3                THE PROSPECTIVE JUROR:  Uh-huh.

4                THE COURT:  Again, verbal.

5                THE PROSPECTIVE JUROR:  Yes.

6                THE COURT:  Thank you.  I don't mean to correct you,

7    but we've got to get it down on the record.

8                So you are not particularly partial to law

9    enforcement or against, you'll judge each witness

10   individually?

11               THE PROSPECTIVE JUROR:  Right.  Yes.

12               THE COURT:  Did you have any problems with the

13   federal government of any kind?

14               THE PROSPECTIVE JUROR:  No.

15               THE COURT:  Have you yourself ever been the victim

16   of a crime?

17               THE PROSPECTIVE JUROR:  No.

18               THE COURT:  And do you think you can be fair and

19   impartial?

20               THE PROSPECTIVE JUROR:  Yes.

21               THE COURT:  Okay.  Any challenge for cause?

22               MR. MARSHALL:  No, Your Honor.

23               MR. GOLTZER:  No, sir.

24               THE COURT:  All right.  So you are qualified to be a

25   juror.  That doesn't mean you will be a juror.

PROSPECTIVE JUROR 83                    573

1          THE PROSPECTIVE JUROR:  Right.

2          THE COURT:  It means you're qualified.  And you come

3    back tomorrow morning at 9:30 to the central jury room.  Thank

4    you very much.

5          (Juror leaves.)

6          THE COURT:  All right.  By my count, that is 50

7    jurors.  Is that right?

8          MR. MARSHALL:  Yes, Your Honor.

9          MR. GOLTZER:  Yes.

10         THE COURT:  And we'll resume tomorrow morning at

11   10:00, please.  And Mr. Ryan will file -- I believe we gave

12   him a copy of the decision on the motion.

13         THE CLERK:  I have it, yes.

14         THE COURT:  The motion that the government made in

15   limine, which I ruled on, and the government's motion is

16   granted.  I think copies were passed out to everybody.

17         MR. GOLTZER:  In view of Your Honor's ruling, may we

18   confirm for the record once again that we're asking the

19   government to make that witness, Mr. Machacek, available to us

20   when necessary.  We have no control over him.

21         THE COURT:  Yes.

22         MR. GOLTZER:  And we've contacted his lawyer, who

23   declined to permit us to interview him, which is not, of

24   course, the Court's problem but we would like the government

25   to make him available.

574

1          THE COURT:  The government is directed to make him

2     available.

3          MR. MARSHALL:  Yes, Your Honor, of course.

4          THE COURT:  And give them -- when I say "give them,"

5     give the government a little notice as to when you want him.

6          MR. GOLTZER:  He will be our first witness, so the

7     government will know best when they intend to rest.

8          MR. MARSHALL:  Yes.

9          THE COURT:  Very well.  That's the notice.  Thank

10    you very much.

11         MR. MARSHALL:  Thank you.

12         MR. GOLTZER:  Thank you.

13         THE COURT:  See you tomorrow morning.  Thank you

14    very much.

15         (Matter adjourned until January 9, 2014, at 10:00

16    a.m.)

17

18

19

20

21

22

23

24

25

575

1                  T A B L E   O F   C O N T E N T S

2    PROSPECTIVE JURORS                          PAGE

3    PROSPECTIVE JUROR 52                         468

4    PROSPECTIVE JUROR 70                         475

5    PROSPECTIVE JUROR 62                         480

6    PROSPECTIVE JUROR 65                         486

7    PROSPECTIVE JUROR 67                         491

8    PROSPECTIVE JUROR 35                         499

9    PROSPECTIVE JUROR 68                         505

10   PROSPECTIVE JUROR 74                         510

11   PROSPECTIVE JUROR 25                         518

12   PROSPECTIVE JUROR 47                         528

13   PROSPECTIVE JUROR 64                         530

14   PROSPECTIVE JUROR 11                         537

15   PROSPECTIVE JUROR 19                         539

16   PROSPECTIVE JUROR 82                         552

17   PROSPECTIVE JUROR 84                         559

18   PROSPECTIVE JUROR 93                         564

19   PROSPECTIVE JUROR 83                         568

20

21

22

23

24

25

576

        I certify that the foregoing is a correct transcript from

the record of proceedings in the above-entitled matter.


                        _____
                        Sherry Bryant, RMR, CRR
                        Official Court Reporter