LAW OFFICE OF
# MICHAEL K. BACHRACH
276 FIFTH AVENUE, SUITE 501
NEW YORK, N.Y. 10001
---------------
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *                                                                                     http://www.mbachlaw.com
* admitted in N.Y. and D.C.                                                                michael@mbachlaw.com

March 27, 2014

By ECF
Hard copy to follow by mail

The Honorable John F. Keenan
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                                                     ***Re: United States v. Joseph Romano,***
                                                       ***12 Cr. 691 (JFK) (EDNY)***

Dear Judge Keenan:

      This letter is submitted for Your Honor's consideration in the sentencing of Joseph Romano in the above-referenced matter. After reviewing the facts set forth below, and the letters drafted on his behalf,[1] it is requested that the Court fashion a fair and just sentence that complies with 18 U.S.C. § 3553(a). It is respectfully suggested that a sentence of no more than 288-months imprisonment (i.e., 24 years), the sentence imposed on co-defendant Dejvid Mirkovic, is the appropriate disposition in this matter. It is further submitted that the defendant's sentence on the present Indictment should run concurrent to the 15-year sentence previously imposed in United States v. Romano, et al., 09 Cr. 170 (JFB) (EDNY).

### I.    Charge and Conviction

      On March 24, 2009, Joseph Romano (hereinafter, "the defendant" or "Romano") was indicted in the Eastern District of New York under Indictment No. 09 Cr. 170 (JFB) for

---

[1] The defendant specifically instructed the undersigned not to request any mitigation letters for submision on his behalf as exhibits to this sentencing memorandum. As we understand it, the defendant's reasoning is, inter alia, that he does not want any family or friends to be put through the emotional process of drafting letters seeking leniency in his sentencing in the present case. As such, defense counsel have respected the defendant's wishes and refrained from making any new outreach. Nonetheless, the defendant's wife, Karen Romano, has requested that her thoughts on her husband's sentencing be expressed to this Court so Mrs. Romano's letter is annexed hereto as "Exhibit A". Further, since an extensive mitigation presentation had been previously submitted in relation to the defendant's prior case, the letters previously prepared on his behalf are annexed hereto as "Exhibit B". We believe that notwithstanding the defendant's request that we refrain from asking his family and friends to write any new mitigation letters, effective representation requires us to at least bring to this Court's attention the heartfelt letters that had been previously submitted for the court's consideration in Romano's prior case.

conspiracy to commit wire and bank fraud in violation of 18 U.S.C. 1349 (hereinafter, the "coin fraud case"). On September 20, 2010, Romano voluntarily pleaded guilty to his involvement in the coin fraud case, and on February 9, 2012, Romano was sentenced to a term of 15 years imprisonment for his involvement in the coin fraud conspiracy.

Thereafter, on November 7, 2012, Romano was charged in a separate indictment for two counts of conspiracy to kill an officer and employee of the United States (hereinafter, the "instant Indictment"). The underlying facts and evidence with respect to both counts were identical and fully overlapped, the only difference between the counts being the alleged victim. Count 1 charged a conspiracy to kill the Honorable Joseph F. Bianco, the judge who had presided over the defendant's prior coin fraud case. Count 2 charged a conspiracy to kill Assistant United States Attorney Lara Treinis Gatz, the prosecutor assigned to prosecute the defendant in that prior case.

On January 23, 2014, Romano was convicted by a jury before Your Honor of both counts of the instant Indictment. Specifically, the Government alleged, and the jury presumably found, that Romano had entered into a conspiracy with co-defendant Dejvid Mirkovic to murder the judge and prosecutor associated with his 15-year term of imprisonment on the coin fraud case.

At trial the defense maintained that Romano had been entrapped: that he had been induced to commit the crime by a cooperating informant named Gerald Machacek; that the crime would never have occurred but for the Government's involvement; and that Romano may have been predisposed to commit coin fraud or even assault, but he was not predisposed to commit murder. Notably, at no point did the defense concede at trial that Romano intended Judge Bianco or AUSA Gatz to be actually murdered. Indeed, the Government's own evidence supported the theory that the murder conspiracies were set in place in an attempt to have the coin fraud case transferred to a different judge and prosecutor, in the hope, however misguided, that a new judge and prosecutor would be amenable to a lesser sentence.

The Government countered with multiple consensual recordings between the defendant and two different Government agents (Mr. Machacek and an undercover law enforcement officer posing as a "hitman"), as well as the recordings of multiple telephone calls between Romano and co-defendant Dejvid Mirkovic, who was at liberty during all of his offense conduct. The Government also introduced consensual recordings between undercover law enforcement officers and Mirkovic, as well as bank records and other evidence establishing that Mirkovic made every effort to effectuate the murder conspiracies, and even attempted to arrange additional assaults of his own targets completely separate from Romano. As this Court is aware, Mirkovic pleaded guilty to his involvement in the murder conspiracies and was sentenced by Your Honor to 24-years imprisonment.

We do not dispute any aspect of Mirkovic's conduct, nor, for purposes of these proceedings, the sufficiency of evidence supporting Romano's conviction on the instant Indictment. These were extremely serious crimes and in no way do we mean to diminish Romano's culpability. We only note Romano's role and Mirkovic's separate conduct to give context to Romano's Section 3553(a) analysis.

II.  **Prior Objections to the Pre-Sentence Report**

On March 14, 2014, defense counsel submitted a letter to the Probation Department objecting to certain aspects of Romano's Pre-Sentence Report ("PSR"). On March 19, 2014, the Government submitted its objections to the PSR as well. To date, a revised PSR has not issued, as such, we ask this Court to direct the Probation Department to make the following changes:

1. Paragraph 6, states, <u>inter alia</u>, "Additionally, on August 10, 2012, Romano requested the informant's assistance in procuring a contract killer to murder the Judge, the USA, and Others." That particular portion of para. 6 is not accurate. While Romano did discuss various topics with the confidential informant on that date, at no point during that recorded conversation does Romano "request[] the informant's assistance in procuring a contract killer…" To the contrary, it is the informant that repeatedly brings up the topic of murder. Romano merely requests assistance procuring an investigator to investigate the judge, prosecutor, and various witnesses related to his upcoming restitution hearing in the separately indicted coin fraud case. While on later dates Romano is recorded making statements that could be found consistent with the intent expressed in para. 6, he does not make those statements on August 10, 2012. As such, we object to the mischaracterization of the August 10, 2012 recorded conversation.

2. Paragraph 23, states, <u>inter alia</u>, "Romano directed Mirkovic with respect to <u>every aspect</u> of the offenses, telling him who to call, when to call, what to say, and arrange for payments to other inmates and the undercover agent." We object to the inclusion of the claim that Romano directed Mirkovic with respect to "every aspect" of the offense. Such is overbroad, not supported by the record, and simply untrue. Romano was incarcerated during the entirety of the offense and had no way of monitoring Mirkovic's every action. For example, Mirkovic is recorded attempting to negotiate additional assaults, separate and apart from those allegedly requested by Romano, against targets having nothing to do with Romano or Romano's coin fraud case. As such, we object to this overbroad statement.

3. Paragraph 70 discusses Romano's father's medical condition at the time of Romano's sentencing in the coin fraud case. Since that time, however, Romano's father has passed away. As such, paragraph 70 should be updated accordingly.

4. Paragraph 81, which appears to have been copied directly from Romano's prior Pre-Sentence Report, states that when Romano's wife "was questioned about the defendant's involvement in the <u>instant offense</u>, his wife opined that the defendant's culpability is limited to his not being 'vigilant enough.' " Romano's wife did not make this statement in relation to the "instant offense" but rather in relation to the prior coin fraud case. This appears to be an accidental oversight

The Honorable John F. Keenan
March 27, 2014
Page 4 of 11

      during the drafting of the present Pre-Sentence Report, and we ask that it be corrected.

5. Paragraph 81 also states that Romano's wife "asserted that as a consequence, his employees carried out <u>the instant fraud scheme</u> without his permission or knowledge." Once again, the reference to the "instant fraud scheme" appears to actually be a reference to his "prior" coin fraud scheme, and as such we ask that it be corrected.

6. Paragraph 94 states, <u>inter alia</u>, that Romano entered Nassau Community College in "January <u>1981</u>." That appears to be a typo and should instead state, "January <u>1991</u>." As such, please correct this typographical error.

7. Paragraph 121, discussing the "Advisory Guideline Provisions," states, <u>inter alia</u>, "Per U.S.S.G. § 5G1.3(a), the sentence for the instant offense <u>must</u> be imposed to run consecutively to the undischarged term of imprisonment." Since, however, the Sentencing Guidelines are no longer mandatory, the Probation Department's conclusion is in error. Instead, the paragraph should read in relevant part, "the sentence for the instance offense <u>may</u> be imposed to run consecutively…" As such, we object to the claim that the Advisory Guidelines could ever be mandatory, and respectfully request that the relevant word choice be changed from "must" to "may" in order to reflect the current state of the law.

In reference to objections 3, 4, 5, 6, and 7, above, we note that the Government's March 19, 2014 letter to the Probation Department takes the position that it "does not oppose the defendant's … objections and suggested corrections to the PSR" (Gov't letter, dated, March 19, 2014, at 6).

### III.    <u>The Sentencing Guidelines Calculation</u>

The PSR suggests that Romano's total adjusted offense level is 49 with a criminal history category of III, which results in an advisory Sentencing Guideline of life imprisonment (<u>see</u> PSR at ¶ 58, 65, 121). The PSR also suggests that, "Per USSG § 5G1.3(a), the sentence for the instant offense must be imposed to run consecutively to the undischarged term of imprisonment" (PSR at ¶ 121), <u>i.e.</u>, consecutive to the time remaining on Romano's 15-year sentence in the coin fraud case.

We do not dispute the Probation Department's calculation of Romano's adjusted offense level or criminal history category, however we respectfully submit that a consecutive sentence is not required. We also believe that a substantial downward variance from the Guidelines is warranted. <u>See</u> Point IV, <u>infra</u> (discussing why a non-Guideline sentence considerably less than life is appropriate in this case pursuant to 18 U.S.C. § 3553[a]).

18 U.S.C. § 3584(a) provides:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run <u>concurrently or consecutively</u>, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

(Emphasis added.) Additionally, "The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set force in section 3553(a)." 18 U.S.C. § 3584(b).

Since the Sentencing Guidelines are no longer mandatory, this Court is no longer obligated to follow U.S.S.G. § 5G1.3(a), and instead this Court may exercise its discretion as it sees fit pursuant to 18 U.S.C. §§ 3584(a), 3584(b), and 3553(a). Notwithstanding the severity of the crimes of conviction, and for the reasons discussed in Point IV, <u>infra</u>, we respectfully submit that a concurrent non-Guideline sentence of no more than 288-months imprisonment is appropriate in this case.

**IV.**     **Post-Booker Sentencing Framework**

As is now well known, in <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 570 (2007), the Supreme Court re-affirmed the sentencing regime announced in <u>United States v. Booker</u>, 534 U.S. 220 (2005), which requires District Courts to view the Guidelines as merely advisory, and instructs District Courts to tailor a sentence in light of all of the statutory concerns set forth in 18 U.S.C. § 3553(a). Under 18 U.S.C. § 3553(a), District Courts are directed to impose the minimally-sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, incapacitation, and rehabilitation – by imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). <u>See Kimbrough</u>, 128 S.Ct. at 570. This "parsimony provision" is "an overarching provision," representing a cap above which a District Court is statutorily prohibited from sentencing above, even when a greater sentence is recommended by the advisory Sentencing Guidelines. To put it another way, pursuant to 18 U.S.C. § 3553(a), the Guidelines are to be viewed as statutorily subordinate to the parsimony clause. <u>See Kimbrough</u>, 128 S.Ct. at 570.

Thus, after properly calculating the advisory range under the Sentencing Guidelines, a factor which serves as only the "starting point" or "initial benchmark," District Courts must then consider each of the Section 3553(a) factors to impose a sentence sufficient, but not greater than necessary, to fulfill the purposes of sentencing. <u>See Gall v. United States</u>, 128 S.Ct. 586, 596-97 (2007). To that end, the Supreme Court has also explained that District Courts may not presume

the advisory Guidelines range to be reasonable. See Gall, 128 S.Ct. at 596. Further, the advisory Guidelines range is to be given no greater weight than any other Section 3553(a) factor. Id. at 602.

As explained by the Second Circuit, a sentencing judge is "required to consider the relevant Guideline provisions in determining a reasonable sentence," United States v. Rubenstein, 403 F.3d 93, 98-99 (2d Cir. 2005), but unless a sentencing judge considers all of the factors set forth in 18 U.S.C. § 3553(a), as well as the applicable Guideline range, it cannot be concluded that the resulting sentence is "reasonable." See United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Moreover:

> A district court may not presume that a Guideline sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District judges are, as a result, generally free to impose sentences outside the recommended range. When they do so, however, they "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." [Gall, 128 S.Ct.] at 597. In this way, the district court reaches an informed and individualized judgment in each case as to what is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a).

United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008).

Similarly, other statutory provisions also give the District Court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: In determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the court is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added). Further, under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).

In this case, notwithstanding the fact that the Sentencing Guidelines recommend a sentence of life imprisonment, we respectfully submit that a complete picture of Romano, coupled with an effort to avoid unnecessary sentencing disparities, presents a defendant worthy of a non-Guideline sentence of no more than 288-months imprisonment to run concurrent to his prior undischarged sentence of incarceration.

While such would amount to a significant downward variance, such would still be a substantial sentence, one likely equating to a near-life sentence when one takes into account Romano's age. We believe, however, that providing Romano hope that one day he may reunite with his family is an olive-branch of humanity that is more than warranted here, particularly when one considers that no individuals were in fact harmed as a result of Romano's conduct in

the present case. As such, Romano presents the following for this Court's consideration relative to the factors outlined in 18 U.S.C. §§ 3553(a) and 3661.

### A. The History and Characteristics of Joseph Romano

The defendant is 51 years old. He grew up in Levittown, New York, in a working class family together with three brothers and a sister. His elderly mother still works as a nurse, although his father passed away recently. The Defendant has been married to his wife Karen for 14 years. They have three children: Joseph (age 15), Charlie (age 14), and Sophia (age 11), who all live together near the defendant's mother in Levittown. Following graduation from high school in 1982, the defendant enlisted in the United States Navy, where he served his country for six years until his Honorable Discharge.

Although the defendant requested that no mitigation letters be submitted on his behalf in this case, the defendant's selflessness and charity was frequently emphasized and repeated in the many letters submitted to Judge Bianco prior to the defendant's sentencing in the coin fraud case (see letters originally submitted as attachments to *ecf* #384 and *ecf* #386 under Indict. No. 09 Cr. 170 [EDNY], now annexed hereto collectively as, "Exhibit B"). Those letters evince that the defendant was a significant contributor to the Unity School in Florida and often volunteered his services there as well. The defendant was also a generous supporter of the Smile Train, an organization that provides support services to children born with cleft palates or cleft lips. Many of the authors of the character letters submitted in Romano's coin fraud case attest to the defendant's efforts with and on behalf of children. The dominant theme of all of those mitigation letters was the defendant's generosity, charity, and selflessness.

This Court should also be aware that until his transfer to the Special Housing Unit ("SHU") at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), the defendant demonstrated continuous acts of selflessness and charity well beyond the norm during his incarceration. See, generally, Exhibit B. While still being detained at the Nassau County Correctional Center ("NCCC"), the defendant participated in the chemical dependency treatment program known as the "DART" program. See Exhibit B at 1. During his time in the DART program the defendant attempted to assist other inmates with advice about appropriate behavior in the program and in the community, and urged his fellow inmates to develop post-release plans and introduced, when needed, inmates to his spiritual advisor, Pastor Anthony Filipponi (who also submitted a strong letter of support on behalf of the defendant in the coin fraud case). See Exhibit B at 2-11; see also Exhibit B at 67-68. The defendant created and taught a beginner's flight instruction class at the NCCC, and introduced fellow prisoners to the importance of reading classic literature. Other letters submitted in connection to the coin fraud case further attested to the defendant's active assistance in leading group meetings and helping others to improve their lives while detained at the jail. See, generally, Exhibit B.

The defendant's own rehabilitative efforts prior to his transfer to the MDC SHU were well documented in the coin fraud case. He earned Certificates from The Salvation Army for his completion of its Bible Correspondence Course, the Society of St. Vincent De Paul for his contributions to its Self Awareness Series, and The Divine Mercy Ministry for his participation

in its Employment Preparation Workshop. In conjunction with his participation and leadership in the DART program at the NCCC, the defendant made extraordinary efforts to prepare others for a brighter future.

It is of course true that the family of any incarcerated defendant will suffer as the result of the unavailability of the prisoner. The family of this defendant, however, is peculiarly vulnerable and ill-suited to survive in the absence of the defendant. Romano's convictions in both cases have had a significant impact on his wife and children's well-being. The truly unique aspect of the family dynamic is that the defendant had been the primary provider of emotional support and direction for their children because of their disabilities and those of Mrs. Romano, as well. Mrs. Romano remains ill-equipped to deal with their children's special needs.

As well documented in the coin fraud case, as a result of these unique circumstances, there has been significant regression in the stability, emotional health, and educational performance of their children since the defendant's incarceration. As stated in one psychiatric report submitted in the prior case, "Mr. Romano was the glue that held this family together and without this glue, the family is dissolving and is at great risk for complete self destruction. Sadly, Mrs. Romano does not have the physical strength, flexibility, resilience, or capacity to successfully parent these very special children beyond merely surviving. Without the presence of Mr. Romano to orchestrate and direct, these children will never thrive and are at a very high risk for severely negative outcomes as they develop into adults." See Dr. Michael Eberlin, Ph.D., Psychological Evaluation of the Romano Family, dated, February 2011 (to be filed separately under seal because it includes psychological findings regarding the defendant's three underage children).[2]

### B. Need for Sentence Imposed to Reflect Seriousness of Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public from Further Crimes, and Provide Joseph Romano with Needed Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

This case presents a situation where the defendant has been convicted of very serious crimes so we do not dispute that a lengthy sentence is appropriate. The question, however, is how lengthy must the sentence be to be sufficient, but not greater than necessary, to satisfy the purpose of imposing the sentence in the first place?

Sadly, to a great extent this case presents a cautionary tale of the unintended consequences of incarceration and the inequities of Federal sentencing. Romano entered prison as a non-violent essentially-white-collar offender and now stands convicted of his participation in a Government manufactured, though still horrific, conspiracy. We do not mean in any way to diminish the severity of the crimes to which he has now been convicted, but we also would be doing a disservice to the defendant if we ignored the context in which these crimes evolved.

---

[2] Rather than repeat publicly the findings of Dr. Eberlin's pyschological report, we respectfully request that Your Honor review it under seal and derive from it whatever conclusions that Your Honor believes appropriate.

Romano entered prison after having voluntarily pleaded guilty to a conspiracy to inflate the price of collectable coins in order to sell the coins at a significant profit above their actual worth. Due in large part to the vulnerability of the victims (many elderly), Romano was sentenced to 15 years imprisonment. Without doubt 15-years is a significant sentence, although still one which was within the Guideline range that Romano had stipulated was reasonable as part of his plea agreement. Once in jail, however, Romano's life quickly changed, and not before long his life had spiraled to where we stand today.

Incarceration is not intended to have this result. It is not intended to change a person for the worse. The purpose of sentencing is to punish, but here the specter of facing a 15-year sentence appears to have had much more devastating effects than mere punishment. Indeed, it appears that the closed confines of incarceration did far more damage to Romano's psyche than Romano's coin fraud victims ever suffered themselves. There is simply no other way to explain Romano's transformation, and that in and of itself compounds the tragedy of this case.

While the evidence at trial revealed that Romano had learned how to gain access to more telephone calls and more meals than he was entitled (relatively minor infractions of prison rules), and also that he held a severe grudge against all those involved in his 15-year sentence, the conspiracy that followed was borne out of desperation, fear, and an utter loss of himself. The conspiracy, assuming as we must for purposes of sentencing that it did in fact take place just as the Government alleged, was a product of what Romano became, but it is not a fair representation of the man as a whole.

The letters submitted on Romano's behalf in the coin fraud case, as well as the additional letter Karen Romano insisted on submitting – against her husband's wishes – in this case, make clear that the defendant was, is, and always will try to be, a good father, husband, and friend. This Court has witnessed the defendant at his worst, but we do believe there is good in this man.

A sentence of no more than 288-months (i.e., 24 years) is still nearly a life sentence for a defendant that never actually harmed anyone, and was never even in a position to actually carry out the acts of desperation that he had succumb to. A sentence of this length, or no more than this length, would unquestionably reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes. Indeed, the Bureau of Prisons is quite capable of protecting the public from further crimes, and the Department of Justice has already proven its ability in this case to monitor the defendant's activities in prison and to ensure that no civilian is ever placed in any actual danger of retribution.

As such, we respectfully submit that a concurrent sentence of no more than 288-months imprisonment (i.e., 24 years) would be more than adequate to satisfy the goals of sentencing in this specific and unique case.

### C. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

18 U.S.C. § 3553(a) also points to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, Romano was indicted with one co-defendant, Dejvid Mirkovic. While Romano exercised his Consitutional right to trial, Mirkovic pleaded guilty, accepted responsibility for his role in the offense, and received a sentence of 288-months imprisonment. While we do not dispute that co-defendant's who plead guilty often receive lesser sentences than co-defendants who assert their innocence and procced to trial, at the same time each defendant's role in the offense must also be examined in order to determine whether that general practice is appropriate in each individual case. Here, we respectfully submit that Mirkovic's sentence should be viewed as the ceiling for determining Romano's sentence, because to proceed otherwise – we believe – would create an unwarranted sentencing disparity between the two.

Here, both defendants were charged under the same indictment for their respective roles in both murder conspiracies. While the Government takes the position that Romano was the leader of the conspiracy, and that it was Romano that directed most of Mirkovic's conduct in relation to the conpiracy, Romano's loss of self resulting from his incarceration is what clearly led to his conduct, whereas the undersigned cannot fathom any reason why Mirkovic took on his role.

Romano was in custody at all times throughout the duration of the offense, trapped by a 15-year sentence of incarceration, due in part to Mirkovic's cooperation with the Government in the coin fraud case. On the other hand, Mirkovic was at liberty free to proceed or withdraw at any time he chose, knowing full well that the Government had already agreed not to seek a jail sentence against him in conjuction with the coin fraud indictment.

Yet, notwithstanding the fact that Mirkovic was at all times completely free to ignore Romano and literally walk away, it was Mirkovic who boarded a plane on at least two occasions and flew from New York to Florida in order to withdraw the money necessary to fund the conspiracies, and it was Mirkovic that paid the undercover law enforcement officer (posing as a hitman) to assault Nick Pittas and to kill Judge Bianco and AUSA Gatz. Indeed, it was Mirkovic's safe, not Romano's, where the police seized a hand gun and the money intended to fund the murder conspiracies. And there is no dispute that Mirkovic was also recorded attempting to negotiate side deals with the "hitman" – assaults and other murders against his own targets and for his own ends, each without Romano's participation or even knowledge.

Indeed, of the fourteen Overt Acts repeated in both counts of the Indictment, Romano was alleged to have particpated in four Overt Acts whereas Mirkovic was accused of particiapting in twelve. Moreover, Romano was charged with only two Overt Acts that did not include Mirkovic, whereas Mirkovic was charged with ten Overt Acts that did not include Romano.

  Stated simply, neither murder conspiracy could have ever taken place without Mirkovic's involvement.  His actions were the lynchpins necessary to make any *and all* of it possible – even assuming *arguendo* that Romano and Mirkovic had been negotiating with an actual hitman rather than an undercover law enforcement officer.

  As a result, we repsectfully submit that no level of acceptance or regret could justify imposing Mirkovic's sentence below that ultimately imposed on Romano.  As such, we respectfully submit that Romano's sentence should be no greater than the sentence Mirkovic received, and indeed should be somewhat less.

### V. Conclusion

  The sentence imposed upon Romano must be one that is sufficient, but not greater than necessary to satisfy the purposes of sentencing.  It is respectfully submitted that the mitigating circumstances outlined herein, coupled with the need to avoid unwarranted sentence disparities, suggest that a sentence of no more than 288-months imprisonment would be appropriate in this case.  Indeed, we respectfully submit that even a 288-month sentence would be greater than necessary to satisfy the purposes of sentencing, and we ask this Court to fashion a sentence that takes into account the defendant's age, mental suffering, and the effect this sentence will have on his family.

  We thank Your Honor for his consideration in this matter.

                Respectfully submitted,

                Michael K. Bachrach
                George R. Goltzer

                *Attorneys for the Defendant*
                *Joseph Romano*

MKB/mb
cc: All parties of record (by ECF)