**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA,      :
                                   :
                                   :     No. 12 Cr. 691 (JFK)
     -against-                :     No. 16 Civ. 5689 (JFK)
                                   :
                                   :     **OPINION & ORDER**
JOSEPH ROMANO,            :
                                   :
                    Defendant.    :
------------------------------------X

<u>APPEARANCES</u>

FOR DEFENDANT JOSEPH ROMANO
    <u>Pro Se</u>

FOR RESPONDENT UNITED STATES OF AMERICA
    Joshua G. Hafetz
    U.S. Attorney's Office for the Eastern District of New York

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Defendant-Petitioner Joseph Romano's ("Romano") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a).  The Government opposes the motion.  For the reasons set forth below, Romano's motion is DENIED.

### I. Background

    On November 7, 2012, Romano was charged by indictment with two counts of conspiring to murder an employee of the United States, in violation of 18 U.S.C. § 1117.  (Indictment, ECF No. 11.[1])  The charges stemmed from Romano's role in a stunning

---

[1] Unless otherwise noted, all docket entry citation in this Opinion and Order refer to the criminal docket, No. 12 Cr. 691 (JFK).

scheme to murder then United States District Judge, now United States Circuit Judge for the Second Circuit, Joseph Bianco ("the Judge"), and Assistant United States Attorney Laura Gatz ("AUSA").  The evidence presented at trial established that between February 1, 2012, and October 9, 2012, Romano conspired with his friend, Dejvid Mirkovic ("Mirkovic"), to hire a "hitman" to kill the Judge and AUSA in retaliation for their roles in convicting and sentencing him to a 180-month term of incarceration for wire fraud and bank fraud.  (Presentence Investigation Report ("PSR") ¶¶ 1, 6.)

The conspiracy began when Romano, who was serving his 180-month sentence at the time, informed a fellow inmate that he wanted to murder the Judge and AUSA and mutilate their bodies by having them beheaded.  Based on information provided by the inmate, law enforcement set up a sting operation involving undercover law enforcement officers posing as prospective contract killers.  (Id. ¶ 7.)  At Romano's direction, Mirkovic traveled from Florida to New York on three separate occasions to meet with two individuals whom he and Romano believed would carry out the killings.  (Id. ¶¶ 9, 10, 15.)  Unbeknownst to Mirkovic and Romano, both of the potential hitmen were undercover officers participating in the sting.  (Id. ¶¶ 6, 8–9.)

In order to test the undercover officers' bona fides as hitmen, Romano directed Mirkovic to first pay the officers to assault a car mechanic with whom he had a financial dispute. (Id. ¶ 7.)  The undercover officers, after staging the assault with the help of the unharmed mechanic, notified Mirkovic on September 22, 2012, that the assault had been carried out.  (Id. ¶ 11.)  On September 25, 2012, Romano directed Mirkovic to arrange for the murders.  (Id. ¶ 12.)  Shortly thereafter, Mirkovic offered to pay the undercover officers $40,000 to murder the Judge and AUSA on Romano's behalf.  (Id.)  Mirkovic also relayed Romano's instructions for how the murders should be carried out.  (Id.)  Specifically, Romano requested that the heads of the Judge and AUSA be preserved in formaldehyde as "souvenirs."  (Id.)

Between September 22, 2012, and October 2, 2012, Mirkovic delivered a total of $22,000 in cash down payments to the undercover officers.  (Id. ¶¶ 13-16.)  On October 9, 2012, Romano and Mirkovic were arrested.  (Id. ¶ 18.)  Following a two-week trial, Romano was found guilty by a jury of conspiring to murder the Judge and AUSA.  (Verdict Form, ECF No. 155.)

On April 14, 2014, the Court sentenced Romano to two concurrent terms of life imprisonment, one term for each count, to run consecutively with his sentence on his underlying fraud conviction.  (Judgment, ECF No. 171 at 2.)  Shortly thereafter,

3

Romano appealed his conviction and sentence to the Second Circuit, arguing that the Court improperly denied his pre-trial motion to suppress incriminating statements that he made after his arrest.  Specifically, Romano argued that the Court erred in rejecting his claim that the arresting officers violated his Miranda rights by tricking him into believing he was entering into a cooperation agreement with the Government.  (Summary Order, ECF No. 188.)  The Second Circuit rejected Romano's claim and affirmed his judgment of conviction in its entirety on November 17, 2015.  (Id.)

On October 7, 2016, Romano filed his first pro se motion to vacate his conviction pursuant to 28 U.S.C. § 2255 ("First Motion").  (ECF No. 210.)  In the First Motion, Romano argued that his trial counsel and appellate counsel were constitutionally ineffective because neither attorney challenged the validity of his indictment.  (Id. at 1–2.)  Specifically, Romano argued that the indictment in his case violated the Double Jeopardy Clause of the Fifth Amendment because it charged two separate conspiracy counts instead of one, resulting in multiplicitous counts.  (Id. at 2–3.)  In an Opinion and Order dated August 20, 2018, the Court denied Romano's First Motion, concluding that he had failed to establish that the indictment contained multiplicitous counts and, in the alternative, he had failed to demonstrate that he was prejudiced by his attorneys'

4

alleged errors.  (ECF No. 231.)  The Court additionally declined
to issue a certificate of appealability.  (Id.)  On August 27,
2018, Romano filed a motion for reconsideration,  (ECF No.
232.), which the Court promptly denied, (ECF No. 233).  On
September 17, 2018, Romano filed a notice of appeal and moved
for a certificate of appealability in the Second Circuit.  (ECF
No. 234.)

On January 4, 2019, before the Second Circuit had ruled on
Romano's motion, Romano filed a second motion under § 2255
("Second Motion") in this Court.  (ECF No. 247.)  On April 12,
2019, Romano filed a motion in the Second Circuit requesting
leave to file a successive or second motion pursuant to § 2255.
(ECF No. 255.)  On May 8, 2019, the Second Circuit denied
Romano's motion for leave as unnecessary, explaining that his
Second Motion was not "successive" because his motion for a
certificate of appealability was still pending when the Second
Motion was filed.  See Romano v. United States, No. 19-956 (2d
Cir. May 8, 2019).  Citing Whab v. United States, 408 F.3d 116,
120 (2d Cir. 2005), the Circuit transferred the Second Motion to
this Court and directed the Court to construe the Second Motion
as an application to amend the First Motion.  Romano, No. 19-
956; see also Ching v. United States, 298 F.3d 174, 177 (2d Cir.
2002) ("When a § 2255 motion is filed before adjudication of an
initial § 2255 motion is complete, the district court should

5

construe the second § 2255 motion as a motion to amend the pending § 2255 motion."). Since the Second Circuit's order, Romano has filed seven "supplemental" filings ("Supplemental Filings") raising additional claims under § 2255. (See ECF Nos. 257, 265, 266, 277, 278, 284, 283.)

Taken together, Romano's Second Motion and Supplemental Filings raise the following claims in support of his motion to vacate his sentence: (1) the Supreme Court's decisions in Johnson v. United States, 576 U.S. 591 (2015), and Sessions v. Dimaya, --- U.S. ---, 138 S. Ct. 1204 (2018), invalidated his convictions for conspiracy to murder; (2) the Government suborned perjury and introduced misleading evidence during his trial; (3) the Federal Bureau of Investigation ("FBI") violated FBI policy when it opened its investigation into the murder conspiracy; (4) the Government's investigation was predicated on information from an unreliable confidential informant, (5) the Government's reliance on the confidential informant violated FBI guidelines, (6) his underlying fraud conviction is invalid due to an undisclosed conflict of interest between the Government and one of his former defense investigators, and (7) his Confrontation Clause rights were violated during his trial.

In response, the Government argues that Romano's Second Motion and Supplemental Filings are procedurally barred, lack merit, and must be dismissed. For the reasons set forth below,

the Court agrees with the Government and declines to hold an evidentiary hearing on Romano's Second Motion because "the motion and the files and records of the case conclusively show that" he is not entitled to any relief.  28 U.S.C. § 2255(b).

## II. Legal Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may collaterally challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States."  To obtain relief under § 2255, a defendant must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  Because Romano is proceeding pro se, the Court must construe his submissions liberally, "to raise the strongest arguments that they suggest."  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## III. Discussion

### A. Romano's Second Motion is Procedurally Barred

As a threshold matter, Romano's Second Motion and Supplemental Filings are procedurally barred by the one-year statute of limitations set forth in 28 U.S.C. § 2255(f)(1). Pursuant to the Antiterrorism and Effective Death Penalty Act of

7

1996 ("AEDPA"), a motion for relief pursuant to 28 U.S.C. § 2255 is subject to a one-year limitation period that runs from the latest of several dates, including "the date on which the judgment of conviction becomes final," § 2255(f)(1), "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[,]" § 2255(f)(3), and "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," § 2255(f)(4).

Here, Romano's conviction became final when the Supreme Court denied his petition for a writ of certiorari on May 16, 2016. See Clay v. United States, 537 U.S. 522, 525 (2003) (holding that a federal conviction becomes "final" under § 2255 "when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"). Romano's First Motion was timely filed on October 7, 2016. The Second Motion, however, was not filed until January 2019 and the first Supplemental Filing was not added until September 2019, more than three years after Romano's conviction became final and more than two years after Section 2255(f)(1)'s one-year period expired. In his Second Motion, Romano argues that his claim based on Johnson and Dimaya is timely because it relies on a "newly recognized right by the

Supreme Court[.]" (ECF No. 247 at 5.) Johnson, however, was decided on June 26, 2015, and "although the Supreme Court decided Dimaya on April 17, 2018[,] . . . it has never held that Dimaya announced a substantive rule that applies retroactively on collateral review." Kassir v. United States, No. 04 Cr. 0356 (AT), 2019 WL 12493602, at *2 (S.D.N.Y. Apr. 26, 2019), aff'd, 3 F.4th 556 (2d Cir. 2021). Accordingly, a "§ 2255 motion seek[ing] Johnson relief . . . is timely only if it was filed on or before June 27, 2016." Id. Because Romano's Second Motion was filed three years after his conviction became final and four years after the Supreme Court decided Johnson, his motion is untimely under § 2255(f).

Romano, "like any civil litigant, is entitled to amend his [motion] . . . and an amendment will 'relate back' to the date of his original [motion] if the added claim 'arose out of the conduct, transaction, or occurrence set forth'" in the original motion. Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001) (citation omitted) (quoting Fed. R. Civ. P. 15(c)(2)). An amended motion does not relate back, however, "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). "It is not sufficient for a claim to simply come from the same 'trial, conviction, or sentence.' Rather, relation back is permitted only insofar 'as

9

the original and amended petitions state claims that are tied to a common core of operative facts.'" Ozsusamlar v. United States, No. 02 Cr. 763 (KMW), 2013 WL 4623648, at *3 (S.D.N.Y. Aug. 29, 2013) (quoting Mayle, 545 U.S. at 650, 662-64 (concluding that an amendment asserting ineffective assistance at trial did not relate back to the original motion's claim of ineffectiveness at sentencing)); see also Soler v. United States, No. 05 Cr. 165 (RJH), 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) (noting that in a § 2255 proceeding, "courts find relation back only when underlying claims are the same; when facts and legal theories are intertwined; or when one theory clarifies and supplements the other").

Here, the claims raised in the Second Motion and Supplemental Filings are unrelated to the ineffective assistance of counsel claims raised in Romano's original § 2255 motion. Romano's claim based on Johnson and his allegations of Government misconduct are legally and factually distinct from his claim that his trial counsel and appellate counsel were constitutionally ineffective because they failed to challenge his allegedly multiplicitous indictment.  See Soler, 2010 WL 5173858, at *4 (concluding that amended claim alleging actual innocence was unrelated to ineffective assistance of counsel claim asserted in original petition); see also Kirk v. Burge, 646 F. Supp. 2d 535, 552 (S.D.N.Y. 2009) (denying motion to

amend where "[n]one of the new . . . claims have any factual connection to the claims in the original petition").  Because the new claims do not "relate back" to the First Motion and Romano's Second Motion was filed more than one year after his conviction became final, the Second Motion is denied as untimely.

### B.  Romano's Second Motion Fails on the Merits

Even if Romano's Second Motion and Supplemental Filings were not procedurally barred, they would fail on the merits.

#### 1. Romano's Conviction is Unaffected by Johnson and Dimaya

Romano's principal claim in his Second Motion is that his convictions for conspiracy to murder were invalidated by the Supreme Court's decision in Johnson, which held that the so-called "residual clause" within the Armed Career Criminal Act's definition of "violent felony" was unconstitutionally vague in violation of due process.  In support of his claim, Romano also relies on the Supreme Court's decisions in Dimaya and United States v. Davis, --- U.S. ---, 139 S.Ct. 2319 (2019), which invalidated similarly-worded residual clauses in 18 U.S.C. § 16 (Dimaya) and 18 U.S.C. § 924(c) (Davis).

Romano's reliance on these decisions is misplaced.  As Romano is well aware, he was convicted of conspiring to murder a sitting United States District Judge and an Assistant United

11

States Attorney, in violation of 18 U.S.C. § 1117.  Section 1117
does not contain a residual clause or a definition of either
"violent felony" or "crime of violence[.]"  Accordingly, Johnson
and its progeny are irrelevant to Romano's conviction and offer
him no basis for relief.  See McPherson v. United States, No. 19
Civ. 11036 (WHP), 2020 WL 2765914, at *6 (S.D.N.Y. May 28, 2020)
(rejecting defendant's claim based on "the holdings of Johnson,
Dimaya, [and] Davis" because the defendant was convicted of
"Hobbs Act robbery conspiracy in violation of 18 U.S.C. §
1951"); see also United States v. Hoti, No. 15 Cr. 651 (LTS),
2020 WL 7129264, at *2 (S.D.N.Y. Dec. 4, 2020) (concluding
Johnson, Dimaya, and Davis are irrelevant to defendant who was
convicted of carjacking, in violation of 18 U.S.C. § 2119).

### 2. The Government Did Not Suborn Perjury or Introduce Misleading Testimony

Romano next argues that he was denied a fair trial because
the Government (1) knowingly adduced false testimony from a law
enforcement witness, and (2) introduced into evidence an
"incomplete" recording of a telephone conversation between that
law enforcement witness and Mirkovic.  (ECF No. 257 at 44-46.)
Interpreting his arguments liberally in light of his pro se
status, Romano appears to allege that the Government "suborn[ed]
perjury" by failing to ask the law enforcement witness "the
seminal question[:] [D]id [Romano] ever say he wanted to kill

anyone?" (Id. at 44.)  As for the recording, Romano argues that

it was impermissibly "incomplete" because the jury was allegedly

unable to hear portions of Mirkovic's side of the conversation.

(Id. at 45.)  According to Romano, the Government used the

partially "inaudible" recording because Mirkovic's statements

were exculpatory.  Both of these claims fail on the merits.

    As an initial matter, "a showing of perjury at trial does

not in itself establish a violation of due process warranting [§

2255] relief."  Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir.

2003) (citation omitted).  A conviction will be set aside if the

defendant proves that: "(1) false testimony was introduced; (2)

the prosecutor knew or should have known that the testimony was

false; (3) the false testimony went uncorrected; and (4) there

was a reasonable likelihood that the false testimony could have

affected the judgment of the jury."  Calderon v. Keane, 115 F.

App'x 455, 457 (2d Cir. 2004) (summary order) (citing Shih Wei

Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003)).

    Here, Romano offers no credible evidence in support of his

claim that the Government elicited, or even attempted to elicit,

false or misleading testimony.  The mere fact that the

Government refrained from asking a specific question does not

establish that the witness knowingly lied under oath.  See

Florez v. United States, No. 07 Civ. 4965 (CPS), 2009 WL

2228121, at *10 (E.D.N.Y. July 24, 2009) ("Even a direct

conflict in testimony does not in itself constitute perjury."
(quoting United States v. Gambino, 59 F.3d 353, 365 (2d Cir.
1995)).  Additionally, as this Court noted in its Opinion and
Order denying Romano's First Motion, the Government's "evidence
of Romano's guilt[] . . . was substantial" and included, among
other things, "numerous recorded telephone calls between Romano
and Mirkovic planning the murders[] and . . . a full
confession."  (ECF No. 231 at 8.)  Therefore, even if Romano
could demonstrate that the testimony in question was false, he
would be unable to establish that "but for the perjured
testimony, [he] would most likely not have been convicted."
Conteh v. United States, 226 F. Supp. 2d 514, 520 (S.D.N.Y.
2002); see also United States v. Wong, 78 F.3d 73, 82 (2d Cir.
1996) ("[W]here independent evidence supports a defendant's
conviction, the subsequent discovery that a witness's testimony
at trial was perjured will not warrant a new trial.").

      As for the recorded telephone conversation, it is well
established that an audio recording "is generally admissible
'[u]nless the unintelligible portions [of the recording] are so
substantial as to render the recording as a whole
untrustworthy.'"  United States v. Siddiqi, No. 06 Cr. 377
(SWK), 2007 WL 3125313, at *1 (S.D.N.Y. Oct. 23, 2007) (quoting
United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973)).
Romano offers no evidence in support his claim that exculpatory

                               14

portions of the recording were prejudicially unintelligible.
Additionally, the Court notes that Romano's trial counsel did
not object to the admission of the recording before or during
the trial.  Accordingly, Romano has failed to establish that the
Government's use of the recording deprived him of a fair trial.
Romano's claims concerning the Government's evidence therefore
fail on the merits.

### 3. Credibility of the Government's Confidential Informant

Romano's various claims concerning the Government's use of
a confidential informant ("Informant") are similarly unavailing.
In his Supplemental Filings, Romano argues that his conviction
must be vacated because the Informant was later found to be an
"unreliable heron addict," (ECF No. 257 at 47), and the FBI
violated the "Attorney General's Guidelines for Domestic FBI
Operations" by relying on the Informant because his information
did not establish an "articula[ble] factual basis for the
investigation," (id. at 46–48).  Both claims are meritless.

First, Romano's claim regarding the Informant's credibility
appears to be based on a misinterpretation of a June 24, 2016,
Opinion issued by Judge Bianco.  See United States v. Velazquez,
197 F. Supp. 3d 481, 519 (E.D.N.Y. 2016).  In one of his many
Supplemental Filings, Romano argues that Judge Bianco "made a
judicial finding that [the Informant] is an unreliable heroin

15

addict." (ECF No. 257 at 47.) Judge Bianco's Opinion, however, contains no such conclusion. To the contrary, the Opinion cites the Informant's testimony in support of the conclusion that the testimony of a separate Government witness had "substantial weaknesses." Velazquez, 197 F. Supp. 3d at 519.

Second, Romano fails to explain how the credibility of the Informant is relevant to his conviction. The Government did not call the Informant in its direct case. Instead, Romano called the Informant in support of his principal defense of entrapment. (Trial Transcript ("Trial Tr.") at 1383–1447.) During closing argument, the Government noted that the Informant's testimony was immaterial to establishing Romano's guilt because "[n]early all of the evidence was recorded . . . [including] the meetings between [Romano] and [the Informant]." (Id. at 1476.) Additionally, in rejecting Romano's claims on direct appeal, the Second Circuit noted that "the jury heard testimony that Romano had discussed his plans for revenge prior to any government involvement and that Romano himself had admitted to law enforcement that the murder plot 'was his idea.'" (Summary Order, ECF No. 188 at 6.) Accordingly, even if Romano could establish that the Informant was not credible, vacatur of his conviction would not be warranted. See United States v. Spinelli, 551 F.3d 159, 166 (2d Cir. 2008) ("The additional potential for impeachment of [the witness] would in the

16

circumstances have raised no reasonable likelihood of affecting the jury's verdict."); see also Conteh v. United States, 226 F. Supp. 2d 514, 519–20 (S.D.N.Y. 2002) ("A Section 2255 motion is not a vehicle for rearguing the credibility of witnesses.").

Finally, Romano's claim based on the FBI's alleged violation of Department of Justice guidelines is meritless because "such internal administrative guidelines [] are mandated neither by statute nor by the Constitution [and] confer . . . no enforceable rights." Knecht v. United States, No. 95 Civ. 7796 (MBM), 1996 WL 54318, at *3 (S.D.N.Y. Feb. 9, 1996), aff'd, 112 F.3d 504 (2d Cir. 1996); see also U.S. v. Piervinanzi, 23 F.3d 670, 682 (2d Cir. 1994) (noting that Department of Justice guidelines "provide no substantive rights to criminal defendants"). The guidelines at issue here, the "Attorney General's Guidelines for Domestic FBI Operations," expressly note that "[t]he Guidelines . . . are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable by law by any party in any matter, civil or criminal . . . ." Atty. Gen. Guidelines for Domestic FBI Operations § I(D)(2) (Sept. 29, 2008). Accordingly, even if Romano could establish that the FBI violated the Guidelines during its investigation, he would not be entitled to relief. In sum, Romano's various claims based on the credibility of the Informant are both procedurally barred and meritless.

### 4. Conflict of Interest Claim

Romano next argues that his conviction must be set aside because a member of his defense team had an undisclosed conflict of interest during his earlier prosecution for wire fraud and bank fraud.  Specifically, Romano contends that one of his former defense investigators ("Investigator") had an "unethical and unprofessional relationship with [p]rosecuting [United States] Attorney Loretta Lynch."  (ECF No. 266 at 5.)  Romano argues that the Investigator "was in effect a Government spy . . . working in [his] camp."  (Id.)  This claim is entirely meritless.

As an initial matter, Romano's claim relates to his prior fraud conviction and has no bearing on the validity of his conviction in this case.  Second, Romano's Supplemental Filings are devoid of any evidence of an actual conflict of interest.  In support of his claim, Romano cites one article which notes that the Investigator, a former special agent at the Department of Homeland Security and Treasury Department, knows "Lynch from their days of working organized crime and white[-]collar cases" in this District.  See Walter Pavlo, Whistleblower Trapped in Turf Battle Between Two Former U.S. Attorneys, Forbes (Nov. 30, 2017), https://www.forbes.com/sites/walterpavlo/2017/11/30/whistleblower-trapped-in-turf-battle-between-two-former-us-attorneys/?sh=fbf4eea3ec1f.  Romano offers no reliable evidence

18

to support his claim that their relationship was either "unethical" or "unprofessional." (ECF No. 266 at 5.) Finally, Romano fails to explain how the alleged conflict of interest is relevant to his fraud conviction. Former U.S. Attorney General Lynch was not the U.S. Attorney in this District when Romano was indicted for wire fraud and bank fraud. Although she was the U.S. Attorney when he pled guilty, Romano fails to explain how his decision to plead guilty was tainted or influenced by the alleged conflict. Accordingly, Romano's conflict of interest claim fails on the merits.

### 5. Romano's Confrontation Clause Rights Were Not Violated During the Trial

In two Supplemental Filings submitted in June 2022 ("June Supplements"), Romano alleges for the first time that his Sixth Amendment Confrontation Clause rights were violated during his trial. As with Romano's other claims, his Confrontation Clause claims are procedurally barred and substantively meritless.

Romano appears to raise two Confrontation Clause claims in his most recent filings. First, Romano alleges that the Court violated his Confrontation Clause rights by admitting into evidence the recorded telephone conversation between Mirkovic and the undercover law enforcement officer. According to Romano, because he never had an opportunity to cross-examine Mirkovic, the admission of the recording violated his right to

confront the witnesses against him.  Second, Romano argues that
his Confrontation Clause rights were violated when only one of
the two law enforcement officers who conducted his post-arrest
interview was called to testify during the Government's case in
chief.  Romano alleges that his full confession, which was made
during the interview, was obtained through "the use of promises,
threats, coercion, and falsities by [one of] the [a]gent[s]
involved."  (ECF No. 284 at 11.)  Romano appears to contend that
his Confrontation Clause rights were violated when the
Government called as a witness the law enforcement officer who
did not allegedly threaten him.  In support of both claims,
Romano relies heavily on the Supreme Court's recent decision in
Hemphill v. New York, --- U.S. ---, 142 S. Ct. 681 (2022).

The Confrontation Clause bars the admission of
"testimonial" statements of a witness "who did not appear at
trial unless he was unavailable to testify, and the defendant
had had a prior opportunity for cross-examination."  Crawford v.
Washington, 541 U.S. 36, 53-54 (2004).  Statements in
furtherance of a conspiracy, however, "are non-testimonial for
purposes of the Confrontation Clause[] and are therefore not
covered by its protections."  United States v. Shyne, 617 F.3d
103, 108 (2d Cir. 2010) (citing Crawford, 541 U.S. at 56 (noting
that most hearsay exceptions "covered statements that by their
nature were not testimonial—for example, business records or

statements in furtherance of a conspiracy.")).  In Hemphill, the Supreme Court held that a trial court's admission of a plea allocution transcript of an unavailable declarant violated the defendant's Confrontation Clause rights.  Hemphill, 142 S. Ct. at 692.  The unavailable declarant in question, however, was not a co-conspirator and the decision did not disturb the well-establish principal that "statements made in furtherance of a conspiracy" are "by their nature [] not testimonial."  Crawford, 541 U.S. at 56.

Here, Mirkovic's out-of-court statements to the undercover officer were "non-testimonial for purposes of the Confrontation Clause" because they were made in furtherance of the conspiracy to murder the Judge and AUSA.  United States v. Shyne, 617 F.3d 103, 108 (2d Cir. 2010); see also See Magassouba v. United States, No. 03 Cr. 985 (RPP), 2013 WL 5780767, at *7 (S.D.N.Y. Oct. 25, 2013) ("[R]ecorded conversations introduced at trial were admissible as non-testimonial statements made by co-conspirators, during the course of and in furtherance of a conspiracy . . . and therefore, [the defendant] had no constitutional right to cross-examine the declarants." (citation omitted)).  Similarly, the Government's introduction of Romano's own confession did not implicate his Sixth Amendment right to confront witnesses against him because "genuinely self-inculpatory . . . statement[s] [are] admissible under the

21

Confrontation Clause." <u>Williamson v. United States</u>, 512 U.S.
594, 605 (1994).  Finally, as to Romano's claim that his
confession was involuntary, this Court previously rejected this
argument when ruling on Romano's pre-trial suppression motion,
concluding that "there is simply no evidence whatsoever of
deceit by the agents." <u>United States v. Romano</u>, No. 12 Cr. 691
(JFK), 2013 WL 5278420, at *6 (E.D.N.Y. Sept. 18, 2013), <u>aff'd</u>,
630 F. App'x 56 (2d Cir. 2015).  In sum, because the out-of-
court statements identified by Romano are not testimonial, his
reliance on <u>Hemphill</u> is misplaced and his Confrontation Clause
claims fail on the merits.[2]

## IV. Conclusion

For the reasons set forth above, Romano's motion to vacate,
set aside, or correct his sentence pursuant to 28 U.S.C. § 2255
is DENIED.  The Court declines to issue a certificate of
appealability, as Romano has not made a substantial showing of a
denial of a constitutional right.  <u>See</u> <u>Matthews v. United</u>
<u>States</u>, 682 F.3d 180, 185 (2d Cir. 2012).  The Court certifies,

---

[2] In passing, Romano appears to additionally argue that the Government
violated his Confrontation Clause rights during its opening arguments
by characterizing him as a "morally bankrupt career criminal."  (ECF
No. 284 at 10–11.)  Similar to Romano's other arguments, this claim is
procedurally barred and meritless.  The statements in question are
non-testimonial and do not implicate the Confrontation Clause.  <u>See</u>
<u>Crawford</u>, 541 U.S. at 56 (noting that the Confrontation Clause bars
"admission of testimonial statements of a witness who did not appear
at trial unless he was unavailable to testify, and the defendant had a
prior opportunity for cross-examination").

pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and permission to proceed in forma pauperis is DENIED.  The Clerk of Court is respectfully directed to terminate the motion docketed at No. 12 Cr. 691, ECF No. 247, and to close the case at No. 16 Civ. 5689.

**SO ORDERED.**

Dated:  New York, New York
        August 22, 2022

John F. Keenan
_____
John F. Keenan
United States District Judge